## BLACK *v.* THE W. S. TYLER Co.

*Employer and employe — Offer to share profits — Not a contract, when.*

The mere fact that a corporation has decided as a matter of policy to allow its employes to share in the profits does not create a contract obligating it to pay the same, when the offer of the company did not induce the employe to do or forego what he would not have done or foregone but for such offer.

(Decided November 5, 1917.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Bentley, McCrystal & Biggs,* for plaintiff in error.

*Messrs. Tolles, Hogsett, Ginn & Morley,* for defendant in error.

LIEGHLEY, J.   The parties stood in the same order below.

The following facts may be said to be agreed upon or established by the pleadings and proof in the case:

That on July 1, 1914, the defendant promulgated in writing the following profit-sharing plan for the benefit of its employes:

*"Cleveland, Ohio, July 1, 1914.*
"To Our Employees:

"This Company has decided to adopt a profit-sharing plan for the benefit of its employees, beginning January 1st, 1915, and applying to the profits for the year, 1914, on the following basis:

"1st: There will be allowed 6% interest on the Capital Stock. After the above 6% interest on Capital Stock has been paid, all cash dividends will be divided between stockholders and employees as follows:

"2nd: All employees who have been in the service of the Company continually for three years or more, same percentage as to stockholders.

"3rd: All employees in the service for two years but less than three years, two-thirds of the rate of cash dividends.

"4th: All employees in the service for six months but less than two years, one-third of the rate of cash dividends.

"5th: Dividends to employees will be based on the total amount of wages paid such employee for the year ending December 31st.

"6th: This will apply to all persons in any department or capacity who have served the company six (6) months or over within the year except those dismissed or discharged.

"7th: Employees voluntarily leaving the service of the company, or dismissed or discharged, will forfeit their right to share in any dividends.

"8th: Should employees be laid off owing to lack of work, they will be entitled to their share of the dividend based on the wages received by them during the year.

"The Directors reserve the privilege to change this plan as they may consider advisable for the best interests of the organization.

"Yours very truly,
"THE W. S. TYLER COMPANY,
"(Signed)  PROCTOR PATTERSON,
*"Vice-President."*

That the plaintiff was an employe during all the year 1914; that the defendant declared a dividend under said plan early in 1915, based upon the earnings of the employes for the year 1914; that the plaintiff received his share thereof; that the plaintiff continued in the employ of the defendant throughout the year 1915; that early in 1916 the defendant declared a cash dividend payable to its employes of fourteen per cent. (14%), payable, six per cent. (6%) February 25th, four per cent. (4%) July 1st, and four per cent. (4%) October 6, 1916; that the plaintiff was paid the six per cent. (6%) in February, 1916; that plaintiff was laid off by reason of lack of work from February to April, 1916; that in April, 1916, he resumed his employment and continued the same to June 13, 1916, which was the last day he performed service for the company; that about July 1st he called at the office and received his regular pay and then demanded his

four per cent. (4%) cash dividend for the year 1915 and was refused; that the defendant then stated to him that under the terms of the proposed plan he was not entitled to any further dividends; that the plaintiff was in the employ of the defendant at the time the plan was promulgated and continued in the employ of the defendant upon the same terms and conditions as theretofore; that no express inducement was held out by the defendant to the plaintiff to remain in the employ of the defendant other than that which may be said to be contained in the written proposed plan.

The plaintiff waited until after the installment of October 6, 1916, was due to be paid and then began suit in the municipal court for the collection of the two installments of July and October, 1916, each for the sum of fifty-one dollars and fifty-nine cents ($51.59). The second amended statement of claim upon which trial was had below contains a recital of the proceedings of the defendant in respect to its profit-sharing plan and the things done by the defendant thereunder in large measure as recited hereinabove. In addition thereto the statement of claim declares that the plaintiff accepted said offer, so designated thereunder by him, and complied with its conditions, remained in the service of the defendant and rendered service to the defendant in view thereof and relying thereon. He does not say expressly that he communicated the fact to the defendant that he accepted said proposition or regarded the same as an inducement to remain, or that he did forego anything in continuing in the employment of the defendant.

At the close of plaintiff's testimony in the court below, judgment was rendered for the defendant upon the ground, as stated to us, that the statement of claim and the proof offered failed to show any consideration for the claim of plaintiff to the two installments of profits sued for.

One thing seems certain, that if the sums theretofore paid by the defendant to the plaintiff, in pursuance of its profit-sharing plan, were illegally paid, then that fact terminates this lawsuit. It is conclusive for the reason that the illegal distribution of profits by the defendant to its employes cannot be used as a ground for claiming illegal distributions of profits. Nor would any contract arise therefrom obligating the defendant to pay the same.

It was assumed and conceded in argument that the distribution of profits, in accordance with said plan, was legalized to the extent that the stockholders had authorized and approved the plan. Consequently it follows that the proposed distribution of installments of profits in 1916, based upon the earnings of the employes of 1915, was a distribution either of bounties or gratuities, or was founded upon contract. If of gratuities, then of course the fact that the company made certain gifts at one time cannot be used as the foundation for a claim for further gifts. If the claim for the two installments sued for is founded upon contract, when, where and under what circumstances did the contract arise?

It will be noticed that the proposed printed plan, set forth in detail above, recites that the company has decided to adopt a profit-sharing plan. No statement is contained therein that the right to

share in the profits is conditioned upon future service; nor is any statement therein calculated to induce an employe to remain in the service with the object in view of receiving its bounty, unless the mere fact that the offer may be interpreted to have that effect.

The plaintiff says in his statement of claim that he accepted the offer, relied on it, and remained in the service because of it, and he says in his testimony substantially the same thing. But he communicated nothing of this to his employer; and, unless the very terms of this profit-sharing plan should be interpreted as reasonably calculated to amount to an intended inducement, we do not see how the mere fact that the plaintiff remained in the employ of defendant under the same terms and conditions can be claimed to create a contractual relation and obligation to pay the installments.

The plaintiff, when asked at the trial whether or not he was dismissed or discharged on June 13, 1916, refused or failed to give a categorical answer, but an examination of his testimony will disclose that he fully and thoroughly understood on June 13 that that was his last day of employment with the defendant, for the reason that the company, as a matter of policy, had decided to discontinue the pattern-making department. He says he accepted the offer of the company, and, consequently, the offer and his acceptance must constitute the contract, if any existed. By the very terms of Item 7 of the offer, it is provided that, in case of dismissal, the employe shall not be entitled to share in the cash dividends.

It was said that it would be unfair and unjust to permit the company, at about the time an installment of profits was due, to terminate the employment. It is not claimed that the employment was ended by reason of any fraud or bad faith on the part of the company. It is claimed to have been done in pursuance of a large general policy of readjustment by eliminating a department that was not profitable. At any rate, if the plaintiff stands upon the profit-sharing plan, as proposed, for the basis of his contract, he cannot accept a part of it and repudiate a part, unless the repudiation is founded upon some claim of fraud or misrepresentation or deceit.

But it is claimed in the proof and in argument that in the fall of 1915 some labor trouble arose in the pattern-making department and that the superintendent talked with the men, at which meeting the plaintiff was present, and called their attention to the profit-sharing plan as a basis of adjustment of the labor difficulty. However, the plaintiff does not expressly claim that he remained in the employment of the defendant, and would not have so done if this statement of the superintendent had not been made.

It was further urged that the installments authorized by the directors on January 26, 1916, became vested on that date. Plaintiff's right to this money, as sums vested in him on that date, must have been founded upon contract theretofore entered into. The mere fact that the company decided, as a matter of policy, to offer to its employes to share its profits, doubtless with the hope of encouraging efficiency and harmony among them, does not

create a contract obligating it to pay the same the moment the dividend is declared, as though it were a declaration of a dividend on stock of the corporation. To become vested, a contract must have existed. From the proof what did the company by its offer induce the plaintiff to do that he would not have done? What did the plaintiff forego that he would not have foregone but for the offer? So far as the proof shows he did continue and would have continued from July 1, 1914, up to the date of his dismissal in the same manner had the profit-sharing plan not been promulgated. This being true, we can find no consideration for any contract obligating the defendant to pay to the plaintiff these installments of profits sued for.

The case of *Zwolenek* v. *Baker Mfg. Co.,* 150 Wis., 517, 44 L. R. A., N. S., 1214, is relied on by plaintiff as a basis for his right of recovery. Whatever is said in the opinion in that case must be regarded in the light of the facts of that case. The facts recited by the court disclose an express contract, to the effect that the employes shall share in the profits, and this contract to share in the profits, in addition to other wages, antedates the service which he has contracted to do. In the case at bar there is no express contract, nor are the facts such that an implied contract should be inferred, in our opinion.

The majority of the court are of the opinion that the judgment should be affirmed.

*Judgment affirmed.*

GRANT, J., concurs.
CARPENTER, J., dissents.