HARRY A. WELLINGTON, Respondent, v. CON P. CURRAN PRINTING COMPANY, a Corporation, Appellant.*

St. Louis Court of Appeals.   Opinion Filed January 3, 1925.

1.  **APPELLATE PRACTICE: Evidence: Conflicting: On Appeal Verdict of Jury Conclusive.** In an action to recover for compensation alleged to be due pursuant to a profit sharing plan adopted by defendant company, where there was a conflict in the testimony as to whether or not the profit sharing plan adopted by defendant company was continued so as to include the year for which plaintiff claims compensation, the verdict of the jury upon such question upon appeal is conclusive.

2.  **CONTRACTS: Bonus: Bonus Contract Unilateral: Not Based on Mutual Obligations.** The offer of a bonus by an employer under a profit sharing plan, upon acceptance by employee, created a unilateral contract, and the principle of mutuality of contracts as it is applied generally, has no place in the consideration of such contracts; there being no promise on the part of the promisee, there can be no mutual obligations.

3.  **MASTER AND SERVANT: Bonus: Employee Complying with Terms of Employer's Offer: Entitled to Bonus.** Where an employer offered a bonus at the end of each year under a profit sharing plan, upon compliance by the employee with the terms of the offer, a contract supplementary to the contract of employment was created, and, where employer notified employee that he was a participant in the bonus fund to the amount of a certain sum, and that this sum

---

*(1) Appeal & Error, 4 C. J. Section 2836;  (2) Contracts, 13 C. J., Section 191 (1926 Anno);  Master & Servant, 26 Cyc., p. 1037;  (3) Master & Servant, 26 Cyc., p. 1038.

would be placed to his credit on employer's books, the employee was entitled to recover such sum, and the agreement as to the bonus could not be considered a *nudum pactum* in view of the fact that employee was employed and paid by the week, and the offer of bonus was made as an inducement to employee to remain throughout the year.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Harry A. Hamilton*, Judge.

AFFIRMED.

*Leahy, Saunders & Walther* for appellant.

(1) The instrument sued upon and relied upon by plaintiff does not constitute a valid and enforceable contract between plaintiff and defendant. (a) The instrument shows on its face that it was not intended to create any contractual relation or in any manner affect the relations of the plaintiff and defendant. (b) A voluntary agreement entirely apart from the contract of employment is not enforceable unless founded upon some new and valid consideration. Lingenfelder v. Wainwright Brewery Co., 103 Mo. 593; Smith v. Sickinger, 202 S. W. 262; McFarland v. Heim, 127 Mo. 327; Black v. Tyler (1917), 12 Oh. App. 27; Duncan v. Cone Inc., 185 S. E. (Ga.) 203; Russell v. Johns-Manville Co., 53 Calif. App. 572. (c) In order to constitute a valid contract a valid consideration was necessary. The continuance in the employ of defendant throughout the year, even though plaintiff performed duties in addition to those previously performed, did not constitute a sufficient consideration to support the contract alleged. Lingenfelder v. Brewing Co., 13 Mo. 593; Black v. Tyler (1917), 12 Ohio App. 27; Russell v. Johns-Manville Co. (1921), 53 Calif. App. 572; Leach v. Hannibal R. R., 86 Mo. 27; N. Y. Life Ins. Co. v. Goodrich, 74 Mo. App. 355; Raife v. Govell, 105 Wis. 636. (d) The instrument sued upon is too vague and indefinite to be capable of enforcement as a contract. It does not specify any sum nor

bind defendant to pay any sum whatever to plaintiff. Hudson v. Browning, 264 Mo. 58; Buchs v. Stam, 65 Mo. App. 455; Saginaw Medicine Co. v. Dykes, 210 Mo. App. 399; Campbell v. Handle Co., 117 Mo. App. 23; Cold Blast Transportation Co. v. Kansas City Nut and Bolt Co., 114 Fed. 77; Price v. Atkinson, 117 Mo. App. 52; Bailey v. Austin, 19 Minn. 535; Donovan v. Bull Mountain Trading Co., 60 Mont. 87; Varney v. Ditmars, 217 N. Y. 223; McIntosh v. Kimball, 92 N. Y. Supp. 132; Butler v. Kemmerer, 218 Pa. St. 242; Price v. New York Press, 164 N. Y. 406.     (2)     The offer of additional compensation contained in the instrument sued upon constituted a mere offer of a gratuity or gift.   Jereski v. Nussbaum (1921), 190 N. Y. S. 866; Bedwell v. Grand Trunk Ry., 148 Mich. 524; Morgan v. Davis, 117 Ga. 850. (3)   In order to have a completed gift *inter vivos* there must be an intention to give, coupled with a complete and unconditional delivery of the subject-matter of the gift.   The evidence shows no completed delivery within contemplation of law, and plaintiff's Exhibit B merely shows an intention to set aside and give to plaintiff the sum sued for.   12 R. C. L. 933; In re Estate of Soulard, 141 Mo. 642; Thomas v. Thomas, 107 Mo. 459; Reynolds v. Hanson, 191 S. W. 1030; Allrecht v. Slater, 233 S. W. 8; Bank v. McKenna, 168 Mo. App. 254; Frost v. Frost, 33 Vt. 639; Burchett v. Fink, 139 Mo. App. 381; Northrup v. Burg, 255 Mo. 641; Hess v. Sanders, 198 Mo. App. 636; Black v. Tyler, 12 Oh. App. 27.     (4)     Plaintiff sued upon a written contract for the payment to him of a part of defendant's profits for the year 1920.   Plaintiff cannot sue upon a written contract and recover upon an oral promise.   Barber v. Ozark Implement Co., 131 Mo. App. 717; Hening v. Insurance Co., 47 Mo. 425; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137.     (5) Plaintiff cannot declare upon the original contract and recover upon a parol modification.   Halpin Manufacturing Co. v. School District, 54 Mo. App. 371; Kerr v. Sanders, 122 N. C. 635; Paige Contracts, Sec. 2148, p. 3754. (6)   A verbal modification of a written contract must

be pleaded, and unless pleaded cannot be proven. Taussig v. Southern Mill & Sand Co., 124 Mo. App. 602; Koons v. St. Louis Car Co., 203 Mo. 227.

*Verne Lacy* and *J. J. Milligan* for respondent.

*Jno. A. Moore* of Counsel.

(1) The bonus, or reward, offered and to be paid upon stated conditions and contigencies under the ''profit-sharing plan'' is not a gift or gratuity. Kenicott v. Wayne Co., 16 Natl. (U. S.) 471, 21 Sup. Ct. Rep. 452; Payne v. U. S., 268 Fed. 871, 50 App. D. C. 219; Roberts v. Mays Mills, 114 S. E. (N. C.) 530; Zwolanek v. Baker Mfg. Co., 137 N. W. (Wis.) 769, 44 L. R. A. (N. S.) 1214; Johnson v. Fuller, 197 N. W. (Wis. 1924) 241. (2) Where an employee, not under a contract for continuous service or to work after regular hours or to put forth extraordinary effort, is included in a profit-sharing bonus plan of the employer, adopted by his employer and communicated to the employee at the beginning of the period for which the bonus is offered and to be earned, and the plan is accepted by the employee, and he throughout the term renders continuous service, works extra hours and puts forth extraordinary service in compliance with plan, and the employer renders to him after the expiration of the period an account stated of an amount conceded to be due him under and as provided for in the plan, a contract exists and the employer is ·indebted to and obligated to pay the employee the amount so stated. Phillips & Co. v. Hudson, 72 S. E. (Ga.) 128; Roberts v. Mays Mills Co., 114 S. E. (N. C. 1922) 530; Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214; Johnson v. Fuller, 197 N. W. (Wis.) 241; Orton et al. v. Miltonberger, 129 N. E. (Ind.) 47; Kerbaugh v. Gray (1914), 212 Fed. 716; Henderson Land & Lbr. Co. v. Barber, 85 So. (Ala.) 716; Snyder v. Hershey Choc. Co., 63 Pa. Supr. Ct. 528; Scholl v. Hershey Choc. Co., 71 Pa. Sup. Ct. 244; Scott v. Duthie Co., 216 Pac. (Wash. 1923) 853, 28 A. L. R. Ann. 328; Liebnow v. Philippine Vegetable Oil Co., 39 Philippine 60; Sibley v. Stetson et al.,

188 Pac. (Wash.) 389. (3)  The "statement of intention" concerning the distribution of a certain part of the profits may not alone constitute a contract, but the plan, the putting it into effect, acceptance, performance and carrying out the plan, to the point of declaring a bonus for plaintiff, made the contract.  Orton et al. v. Miltonberger, 129 N. E. (Ind.) 47; Admission, defendant's requested instruction C (Rec., p. 38).  (4)  In order to support an account stated it is not necessary that there should have been mutual or cross demands between the parties. A single transaction or claim may form the basis for an account stated, and the claim need have no relation to trade.  May et al. v. Kloss, 44 Mo. 300; Rutledge v. Moore, 9 Mo. 537; Pudas v. Mattola, 138 N. W. (Mich.) 1052; Schultz v. Morette, 40 N. E. (N. Y.) 780; Whittington v. Stanton, 58 So. (Fla.) 489.

NIPPER, C.—Plaintiff brought this suit against defendant to recover for compensation alleged to be due him pursuant to a profit-sharing plan adopted by the defendant company.  In plaintiff's petition he alleges that, during the years 1918, 1919, and 1920, he was employed by the defendant in a responsible executive position; that on or about the tenth of January, 1918, the defendant submitted to the plaintiff, over the signatures of its president and secretary, a proposition and plan in writing, whereby, if the same were accepted by plaintiff, he, in consideration of increased effort and responsibility on his part, and his remaining in the employ of the defendant and making his services satisfactory, would share in a profit-sharing plan for the year ending December 31, 1918, with a promise on the part of defendant that said plan would be renewed from year to year, except under certain contingencies.  Plaintiff avers that he accepted the proposition, and duly performed all things of him required, and that said profit-sharing plan was renewed for the years 1919, and 1920; that on the eighteenth day of January, 1921, the defendant notified the plaintiff, in writing, that he was a participant

in the fund for the year 1920, to the amount of $2500, and that this amount would be placed to his credit on the books of the defendant, with interest at the rate of six and one-half per cent per annum.

The answer was a general denial.

Upon a trial, plaintiff recovered judgment for the full amount, and six per cent interest, making. a total of $2742.42.

Plaintiff had been employed by defendant for a number of years prior to 1918. He testified that on the tenth day of January, 1918, the following plan, in writing, was submitted to him, signed by the president and secretary of the defendant company:

"St. Louis, Mo., Jan. 10th, 1918.

"Mr. H. A. Wellington.

"Dear Sir:

"On Jan. 10, 1918, the Directors voted in favor of a Profit Sharing Plan for the fiscal year ending December 31, 1918. The Department Heads who are to share under this plan are to be divided into Groups Nos. 1, 2 and 3, based on the responsibility of their respective positions with the Company. By reason of the responsible executive position which you occupy, and in the belief that your working efforts can materially influence the profits of the business, we take pleasure in advising you that your name has been placed on the list of par-ticipants for this year.

"This statement of intention concerning the voluntary and contingent distribution of a certain part of our 1918 profits does not in any way constitute a contract on the part of the Company, nor alter or affect any of its contract relations with you or other employees. Unless we receive at once your written declination of this offer we will understand that you accept it on this con-dition.

"This plan is adopted for the fiscal year 1918 only, but it will be renewed from year to year, unless, in the judgment of the Board of Directors, it shall prove un-

desirable, or experience suggests amendments or modifications.

"The deductions from the total net profits referred to in the plan will amount to approximately $94,625 for the year 1918, and therefore the total net profits this year must exceed this amount before anything will be set aside for the fund. The amount applicable for your Group (2) will be thirty per cent of the amount set aside.

"The number of participants in your Group as at present constituted is six and your share, on a *per capita* division, will be one-sixth of the amount earned by your group. However, we reserve the right to increase or decrease the number of participants in your group, as may be necessary from time to time, which of course would slightly alter these figures.

"The Plan.

"The fund shall be known as the 'Employees' Profit Sharing Fund,' and it shall be administered under the following terms and conditions:

"1.    The total fund shall be distributed to the participants by dividing the amount into three parts, one part for each Group, by use of percentages adopted for each division annually. Thereafter the amount of each Group fund shall be equally divided among the participants thereof.

"2.    Participants. Employees entitled to participate shall be only those holding executive positions as described below, whose responsibilities include spending the Company's money, handling its property, making commitments for its account, and the employment and supervision of its employees.

"Participants shall be divided into three Groups, according to the positions held and according to whether and to what extent a participant is contributing to the Company's profits by reason of his position, worth and loyalty, as follows:

"Group 1.—President, Vice-Presidents, Secretary, Sales Manager.

"Group 2.—Estimator and Superintendents.

"Group 3.—Salesmen, Chief Clerks, Bookkeeper and Engineer.

"3. Distribution of Fund. Within sixty days after the annual audit of the Company's books shall have been completed, each participant will be notified of the amount of bonus, if any, to which he is entitled under the plan, and will receive a check for same.

"4. Promotions. In the event of promotion, no change shall be made during the current year in the Group to which a participant is already assigned.

"5. Resignation. Participants who resign from the service during the year shall not be entitled to participate, proportionately or otherwise, in the fund of the current year.

"6. Dismissals. Participants dismissed from the service during the year, for lack of efficiency or because their services are not entirely satisfactory, shall not be entitled to participate, proportionately or otherwise, in the fund of the current year.

"Participants released on account of curtailment in business or shut-downs and not on account of lack of efficiency nor conduct prejudicial to the Company's business, or being officers and failing of re-election, shall be entitled to their proportionate participation in the fund of the current year.

"7. Disability and Death. Participants compelled to leave the service on account of protracted illness, disability or old age, shall be entitled to the proportionate participation in the fund of the current year.

"In case of the death of a participant the Company shall pay to his legal representative his proportionate participation for the current year.

"By order of the Board of Directors."

Plaintiff testified that he received a payment for the years 1918, and 1919, and that after the expiration of the year 1918, he was told by Mr. Corley, the vice-president and general manager of the defendant company, that the plan would continue from year to year, and until such time as plaintiff received another letter. After plaintiff

received his bonus for the year 1919, which was paid about the first of February, 1920, he complained to Mr. Corley about the amount, because he said he thought it ought to be more. He was advised, so he says, by Mr. Corley, that for the year 1920 he would probably receive as much as $2500 or more.

Plaintiff's official position was superintendent of the composing room, where he had charge of about one hundred men. After the beginning of the year 1921, he received the following letter from the defendant company, which was handed to him by Mr. Corley:

"St. Louis, January 18, 1921.

"Mr. H. A. Wellington,

Composing Room.

"Dear Sir:

"We take pleasure in informing you that you are a participant in the bonus salary distribution for the year 1920 to the amount of $2500.

"This amount will be placed to your credit on the books of the company and will bear interest at the rate of six and one-half (6 1/2) per cent annum. Withdrawals will be subject to the approval of the management.

"Yours very truly,

"CON P. CURRAN PRINTING CO.,

"(Signed) F. W. CORLEY,

V. P. & G. M."

Plaintiff remained in the employ of the defendant until some time during the year 1921. About the first of the year 1922, he made some effort to get the interest on the $2500 which had been promised him for the year 1920. He had a conversation with Mr. Curran, the president of the defendant company, and Mr. Curran refused to pay him the money, and told him that he doubted if he would ever get it. Plaintiff said that on account of the bonus system being inaugurated he worked harder, longer hours, and with greater effort, because he expected to be remunerated to the extent of the bonus. His salary in 1913 was $45 a week, and during the time between 1913 and 1920 this was eventually increased to

$85 a week, the last increase occurring during the latter part of the year 1920. On the last day of April, 1921, there was a strike at defendant's plant, and plaintiff went out with other employees. Plaintiff says that he accepted the plan above set out, and that after he received the letter advising him of the $2500 due him for the year 1920, he was asked once or twice by Mr. Corley if he wanted the money, and he advised Corley that he did not, because he did not need the money at that time, and he thought or felt that the six and one-half per cent interest was more than he could get at any other place.

On re-cross examination, he testified that he never received any letter advising him of a profit-sharing plan other than the one given him in 1918. The defendant refused to pay this $2500 or any part thereof.

F. W. Corley, vice-president and general manager of the defendant company, testified that the plaintiff had been in the employ of the defendant about fourteen years, and had been superintendent of the composing room for about ten years prior to the time he quit in 1921, and was paid a straight salary of so much per week, and was not under employment for any definite length of time. He testified that no definite plan for paying employees any sum other than their regular salary during the years 1919 and 1920 had been adopted. He denied promising plaintiff anything in addition to his salary for the year 1920, but said that the commission which was set aside for him was merely an arbitrary allowance by the company, and was not in pursuance of the agreement of January 10, 1918; that during the year 1920, the company did not adopt the profit-sharing plan. He did state, however, that no employees were notified of the change of plan.

It is defendant's contention in this court that the instrument sued on did not create any contractual relation between the parties, and was a mere voluntary agreement on the part of the defendant, and was not

enforceable because not supported by a new and valid consideration; that the continuance in the employment of defendant during the year 1920 did not constitute a sufficient consideration to support the contract alleged; and, further, that the instrument is indefinite in that it did not specify any sum to be paid plaintiff.

It seems to be the general rule, accepted everywhere, that, where the promise of a bonus or reward was made at the time the employee entered the promisor's employ, such promise for additional compensation became a part of the original contract, and is enforceable. There is some difficulty in reconciling the decisions in many jurisdictions as to the rule where the promise of the payment of a bonus is made after the employee enters into his contract of employment, and the facts of each case must govern. Before entering upon a discussion of this question, it may be well to observe that there is a conflict in the testimony as to whether or not the profit-sharing plan adopted by the defendant company for the year 1918 was continued so as to include the year 1920, for which plaintiff claims compensation. The evidence upon that question being conflicting, the verdict of the jury decided that question, and we must assume on appeal that the defendant company continued the profit-sharing plan in force up to and including the year 1920. We do not consider this proposition of defendant so vague and indefinite as to be void for want of mutuality or a lack of consideration. It provides that, before plaintiff would be entitled to receive any sum, a net profit of approximately $94,625 for the year 1918 must be deducted, after which plaintiff's group would be entitled to thirty per cent of the net profits remaining; and it was definitely stated that Group No. 2, to which plaintiff belonged, consisted of estimators and superintendents. There is no question but that plaintiff accepted the proposition, and received his share according to this contract for the year 1918; and when defendant continued this plan in force for the year 1920, and in the beginning of the year 1921 set aside $2500 as plaintiff's

share, what was indefinite became definite. Defendant made the offer, and plaintiff accepted, and this created a unilateral contract, and the principle of mutuality of contracts as it is applied generally has no place in the consideration of such contracts. They are not based on mutual obligations. As there is no promise on the part of the promisee, there can be no mutual obligations. [Scott v. Duthie & Co., 216 Pac. 853.]

The compliance with the terms of this offer of defendant created a contract supplementary to the contract of employment. It was an inducement to plaintiff to remain in the employ of defendant, and to perform efficient and faithful service. Plaintiff, who was employed by the week, was not obligated to remain throughout the year 1920, and it could be inferred from the facts in this record that he was induced to do so, in part at least, by the offer of reward made to him by defendant. This case does not come within that class of cases which hold that there can be no recovery where defendant gets no more service as the result of such a promise than it would had no such promise been made, because plaintiff here was not under a contract of employment for the entire year 1920, but was employed and paid by the week (according to defendant's own testimony), and for this reason the agreement could not be considered a *nudum pactum*. We think the great weight of authority supports the view that plaintiff, under such a state of facts as we have in this record, is entitled to recover the amount sued for. [Zwolanek v. Baker Mfg. Co., 150 Wis. 517; Roberts v. Mays Mills, 184 N. C. 406; Scholl v. Hershey Chocolate Co., 71 Pa. Super. Ct. 244; Scott v. Duthie & Co., supra, and cases cited.]

Learned counsel for defendant cite and rely upon such cases as Russell v. H. W. Johns-Manville Co., 53 Cal. App. 572, Davis v. Morgan, 117 Ga. 504, and Duncan v. Cone, 16 Ga. App. 253, as supporting the views it advocates.

The Russell case by the California Court of Appeals was criticized in the case of Scott v. Duthie & Co.,

216 M. A.—24

supra, and it is stated that the Georgia cases do not support the Russell case. Defendant also relies upon the case of Black v. W. S. Tyler Co., 12 Ohio App. 27. But this case seems to be out of line in some respects with the great weight of authority, and the learned annotator says of this case, in his note in 28 A. L. R., p. 335:

"The decision in Black v. W. S. Tyler Co., (1917) 12 Ohio App. 27, seems out of line with the other decisions."

Learned counsel for defendant, in concluding his printed argument, makes use of the following language:

"In conclusion it is submitted that this case is one in which the plaintiff, perhaps suffering pangs of conscience and remorse through his act of disloyalty and ingratitude, as well as his poor business judgment in unceremoniously quitting a lucrative position in order to champion the demand of his subordinates for a forty-four-hour week, and without any grievance over wages or treatment, now seeks to capitalize that disloyalty by the enforcement of an incompleted gratuity voluntarily offered by his employers."

We think this explains more fully than any language we can use defendant's precise reasons for refusal to pay plaintiff the amount which he should receive.

There appears to be no error in the instructions, and the case was fairly tried. Therefore, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.