49 F.Supp. 405 (1943)
In re MISSOURI PAC. R. CO.
No. 6935.
District Court, E. D. Missouri, E. D.
March 29, 1943.
Thos. T. Railey, of St. Louis, Mo., for trustee of Missouri Pac. R. Co.
Malcolm Frank, of St. Louis, Mo., for Lena H. Menke.
MOORE, District Judge.
This is a claim for a pension under a voluntary plan adopted by the Missouri Pacific Railroad Company in 1917, prior to the adoption of a Federal pension scheme. By the company's plan, no contribution was exacted from the employees who were to benefit from it, but operation of the plan was to be carried out in accordance with certain rules. It was obviously the intent of the company to control dispensations under the plan. By its rules, each pension application was to be passed upon by the Board of Pensions, which was to "determine the eligibility of employes to receive pension allowances." The action of the Board was to be "final and conclusive". Pension benefits were not to be assignable. Nowhere in the resolution adopting the plan did the company use language which would indicate that it felt itself obligated to pay a pension in any particular case; on the contrary, liability was specifically denied and the pensions contemplated were said to be "gratuitous".
Counsel for claimant has cited several cases, and others have been found, which indicate that a pension plan of this sort constitutes an offer of contract supplemental to the original employment agreement, and that once an employee has fulfilled the conditions set down by the company, he is entitled to a pension as a matter of contractual right and may recover a judgment therefor in a court of law. Examination of the cases reveals, however, that they are all distinguishable from the case at hand.
In this case, claimant's pension application had been ruled upon unfavorably by the company, whereas in most of the reported cases, the employee had been granted a pension before litigation ensued. In Wellington v. Con P. Curran Printing Co., 216 Mo.App. 358, 268 S.W. 396, the defendant company had notified the plaintiff, its employee, that he was a participant in a profit-sharing plan and that a certain amount had been set aside on the books in his name as his share under the plan for the past year. Part of the amount said to have been credited was actually paid plaintiff and then defendant reneged on the balance. Suit was brought and plaintiff was successful. The court held that this was a unilateral offer of contract and that plaintiff, by complying, had placed defendant under obligation. It appears, however, that the company in that case had placed no limitations on its bounty and that it prejudiced itself by its own acts, which is certainly not the case here. Likewise in Schofield v. Zion's Co-op., etc., 85 Utah 281, 39 P.2d 342, 344, 96 A.L.R. 1083, plaintiff employee had been retired by the company and had been granted a pension under a system established "to encourage long and faithful service". The sole question at issue in *406 the litigation which later ensued was the right of the company to later decrease the stipend. In Scott v. J. F. Duthie & Co., 125 Wash. 470, 216 P. 853, 28 A.L.R. 328, the employer, faced with the necessity of fulfilling a shipbuilding contract, and cognizant of the difficulty of maintaining a full and efficient staff in war-time, offered a bonus to certain of its key employees who would see the fulfillment of the ship-building contract through. The company did not reserve unto itself any further conditions on its promise, and the court very soundly held that when the employee acted in accordance with the offer, he acquired a contractual right. George A. Fuller Co. v. Brown, 4 Cir., 15 F.2d 672, is a case almost identical with Scott v. Duthie & Co. In Robinson v. Standard Oil Co., La.App., 180 So. 237, the deceased employee had been granted a pension and had been receiving regular payments under it. The court required the company to pay death benefits, which was another feature of the same plan, to the deceased employee's widow. In Korb v. Brooklyn Edison Co., 258 App.Div. 799, 15 N.Y.S.2d 557, it was held that plaintiff could not recover a pension in any greater amount than that voluntarily granted by the company.
In each of the foregoing cases, while the court held that the pension benefit was a matter of contractual right, nevertheless they are all cases in which the company had actually granted a beneficence to the individual making the claim. Cases where the employee contributed to the fund and cases where the pension was definitely a part of the original agreement of employment have been excluded from this discussion.
Certain other cases brought to the attention of the court in behalf of claimant are distinguishable on other grounds. In McLemore v. Western Union Tel. Co., 88 Or. 228, 171 P. 390, 391, the articles of the pension scheme there set up were quite different in terms from the plan sued on here. The Western Union plan said "The company undertakes * * * to establish, maintain and administer a fund * * * for the payment of definite amounts to its employés * * *"; "All employés * * * shall be entitled to insurance * * *". (Emphasis ours.) In Pyrtle v. International Shoe Co., Mo.App., 249 S.W. 432, a bonus plan was under consideration. The issue raised by the company was, not that there was no obligation, but that the obligation was released when the employee left the employment before the end of the calendar year. In Cowles v. Morris & Co., 330 Ill. 11, 161 N.E. 150, the issue decided was whether payment of a pension could be claimed from the general funds of the company when a separate pension fund had been created.
Since the Missouri Pacific Board of Pensions considered claimant's pension application in accordance with its rules, and since it denied the application, likewise in accordance with its rules (there appearing in the record reasonable basis for its decision), we conclude that claimant acquired no right under the pension plan.

Conclusions of Law.
1. The pension plan was a unilateral, voluntary undertaking of the Missouri Pacific Railroad Company, and it was competent for the company to make its bounty subject to whatever conditions it chose and to reserve to itself the power to determine whether such conditions had been met in any specific case.
2. The "Rules and Regulations for the Pension System" adopted by the company's Board of Directors, and the rulings of the Board of Pensions pursuant thereto, absent fraud, are conclusive as to the eligibility of any employee of the company for a pension.
3. Section 4(a) and 4(b) of the "Rules and Regulations" designate at which age employees may be retired and Section 4(c) and 4(d) determine which retired employees shall be pensioned. Except for certain exceptions set out in Section 4(c), wherein the Board of Pensions is given discretion in some cases, twenty-five years continuous service is made a condition precedent to eligibility for a pension. The date when service is deemed to begin is defined by Section 6, and in Section 7 continuous service is defined.
Section 14 of the "Rules and Regulations" provides that pension benefits and allowances are not assignable.
In Section 17, the company specifies that, "All pensions herein provided for are gratuitous, and remain the exclusive property of the Company, until actual payment thereof to the pensioner."
4. The determination of the Board of Pensions with regard to any pension application is final. This is provided by Section 2(c) of the Rules and Regulations. There is no showing that the decision of the Board of Pensions was unreasonable, arbitrary, unfair or capricious in this case. *407 On the contrary, the record here indicates several reasons which may have been the basis of the Board's conclusion.
We conclude that the Board of Pensions having ruled unfavorably upon claimant's application for a pension, he had no right to any pension payments.
The trustee's objections to the report of the Special Master are sustained, the report of the Special Master is overruled, and the claim is disallowed.