259 S.W.2d 408 (1953)
CROSKEY
v.
KROGER CO.
No. 21730.
Kansas City Court of Appeals. Missouri.
June 15, 1953.
*409 Roscoe C. Van Valkenburgh and Bernard L. Balkin, Kansas City (Brenner, Van Valkenburgh & Wimmell, Kansas City, of counsel), for appellant.
A. J. Granoff and Paul Margolis, Jr., Kansas City, for respondent.
BOUR, Commissioner.
Lorin T. Croskey brought this action against The Kroger Company to recover a bonus of $1500, alleged to have become due and payable on January 1, 1949. Verdict and judgment were for plaintiff in the sum of $1717, including interest, and defendant has appealed.
The cause was tried upon an amended petition which alleged that defendant, an Ohio corporation, maintained a branch office in North Kansas City, Missouri; that on or about April 20, 1947, defendant agreed to employ plaintiff as real estate manager for said branch office and agreed to pay him "a salary of $75.00 per week, payable every four weeks, plus a maximum bonus of $1500.00 for each year, pursuant to its Branch Key Men's Incentive Plan," the bonus to be payable at the end of each year provided the branch merchandising profit for each year was sufficient to pay the bonus and plaintiff remained in the employ of the defendant for the full year; that said agreement for the year 1948 was confirmed by defendant in a writing dated February 12, 1948, a copy of which was attached to the petition as an exhibit; that plaintiff accepted such employment in reliance upon said agreement; that he diligently performed his duties as real estate manager until on or about December 11, 1948, when defendant arbitrarily and without just, legal and sufficient cause terminated his employment for the sole purpose of preventing him from securing the bonus for the year 1948; that the branch merchandising profit for 1948 was sufficient to enable defendant to pay the maximum bonus of $1500 pursuant to the incentive plan for 1948; that plaintiff was willing to remain in defendant's employ until the end of 1948, but was prevented from doing so by defendant. The petition further alleged that $1500 was due plaintiff as the amount of his bonus for 1948, and prayed judgment for that amount with 6% interest from January 1, 1949.
Defendant admitted in its amended answer that on or about April 20, 1947, it employed plaintiff as real estate manager for its branch office in North Kansas City and paid him a weekly salary; that "it had a Branch Key Personnel Plan for the year 1948," a copy of which was attached to the answer as an exhibit; that "its branch merchandising profit for the year 1948 was sufficient to enable it to pay bonuses to branch key personnel who qualified under said incentive plan for the year 1948"; and that plaintiff was "a branch key man under said incentive plan" and would have been "eligible for a bonus for the year 1948" if he had complied with all of the provisions of the 1948 incentive plan. Defendant denied, however, that plaintiff accepted employment with it in reliance upon any agreement to pay him a bonus; denied that plaintiff faithfully and diligently performed his duties as real estate manager until December 17, 1948; and denied that it arbitrarily and without legal and sufficient cause terminated plaintiff's employment for the sole purpose of preventing him from receiving a bonus under the 1948 incentive plan. Further answering, defendant alleged that plaintiff failed to perform his duties properly and diligently, and that he lacked initiative and failed and refused to follow instructions of his superiors in the performance of his work as real estate manager; that he was discharged on November 13, 1948, and he did not perform any services for defendant after that date.
The evidence shows that the defendant corporation operated a chain of retail grocery stores. Prior to 1947, plaintiff worked for a real estate firm in Chicago. In February, 1947, he informed Charles M. Upham of Chicago, defendant's division real estate manager, that he was interested in securing a position with defendant. Shortly thereafter he was employed by defendant and put on the payroll. In April, 1947, and after he had worked as a trainee in several of defendant's branch offices, he was elevated to the position of branch real estate manager and assigned to defendant's branch office in North Kansas City, Missouri, *410 where he worked under Lawson Harvey, the branch manager, until his employment was terminated by defendant. Concerning the terms of his employment, plaintiff testified: "Q. Was there anything said about salary? A. Yes, that was very thoroughly discussed, that I was to start at a salary of $75.00 a week, plus this bonus arrangement which had been in effect for a number of years, and I was informed probably always would be in effect. * * * At that time it was paying $1500.00 per year maximum bonus. * * * Q. Maximum, you mean by that if the branch earnedA. If the branch earnings were that high. * * * I was to receive the $75.00 plus the bonus, if and when I was assigned to a branch, and my bonus would start as of that time. * * * I asked the company at the time about the bonus arrangement in that I started during the year, and they said I would be given my bonus prorated from the day I started in one particular branch or was put on the payroll of that particular branch. * * *" Plaintiff further testified that when he came to North Kansas City, Mr. Harvey "reaffirmed" his "previous arrangements with the company" in regard to his salary and bonus.
Plaintiff was assigned to defendant's branch office in North Kansas City on April 21, 1947. At the end of 1947, he was paid a bonus of $1,038. Since he had served as branch real estate manager less than a year, he was paid a proportionate share of the maximum bonus ($1500) for the year, according to the time served. On February 12, 1948, plaintiff received a letter from Harvey, the branch manager, which reads in part as follows: "The Branch Key Men's Incentive Plan has again been approved by the Company and I am happy to inform you that you are to participate in the Plan for 1948, as follows: The Branch Merchandising Profit Base for our branch is $40,000, after deducting 38% Federal Income Taxes. You will earn maximum bonus on Branch Merchandising Profit of $209,000, after deducting 38% Federal Income Taxes. The maximum bonus for your position (full year basis) is $1500. Your bonus will be computed in accordance with the provisions of the Incentive Plan for 1948, some of the essential features of which are stated below." This is followed by a general statement of the terms and conditions of the 1948 plan.
The "Branch Key Men's Incentive Plan for 1948" reads in part: "The definition of `Branch Merchandising Profit' used for the purpose of computing these bonuses shall mean the branch profit as shown by the books of the company after deducting all branch expense * * *. The maximum bonus which will be paid for each position is as follows: * * * Real Estate Manager $1500. * * * Maximum bonuses will be paid provided the branch merchandising profit, as defined above, exceeds the base by an amount established for each Branch. Where less than maximum is earned the percent of bonus to be paid will be determined by dividing this amount into the amount by which the branch merchandising profit exceeds the base established for that branch. Bonus payments will be made from General Office as soon after the close of the year as final figures can be compiled. * * * The key man must remain in the employ of the company for the full year in order to be eligible for a bonus. If he leaves the company during the year for any reason whatsoever, except death, he shall not be entitled to any payment under this plan. In case of death the bonus will be prorated for the part of the year that he was in active full-time service with the company. * * *"
After receiving Harvey's letter of February 12, 1948, plaintiff continued to work for defendant as branch real estate manager. About the first of November, 1948, he went to a hospital for an operation. He returned to work on November 11, 1948, and was informed that day by Harvey that his services were no longer needed. Plaintiff was paid two weeks "advance pay" at the time of his discharge, but was told he would not receive a bonus for 1948. He performed no services for defendant after November 13, 1948.
It appears from the testimony that defendant's "Kansas City branch" extended "as far north as Kirksville, Missouri; as far east as Moberly, Missouri; as far south *411 as Miami, Oklahoma; as far west as Topeka, Kansas"; and that defendant operated all of its stores in buildings which it rented under five-year leases. Plaintiff's principal duty, as branch real estate manager, was to find locations for defendant's stores and to secure five-year leases on suitable buildings when his superiors decided to open new stores. When suitable buildings were not available, it was his job to induce investors to erect such buildings and lease them to defendant for five years. He also acted as custodian of all of defendant's property in the Kansas City branch; and he performed certain adminisstrative duties in connection with the replacement and repair of fixtures and other property. It was conceded by defendant's witnesses that plaintiff performed the last-mentioned duties satisfactorily. As stated, plaintiff served as real estate manager for the Kansas City branch from April 21, 1947 until November 13, 1948. During that period he secured leases on four store buildings. Three of the five-year leases were obtained in the period from April 21, 1947 to January 1, 1948, and the other in 1948. Plaintiff testified that before he was discharged he worked on two "deals" which were consummated after his discharge.
Plaintiff further testified: "I tried very hard, but I ran into a lot of trouble trying to attract investors on only a five year leasehold where the company would only obligate themselves to pay five years' rent, the owner or the investor did not derive sufficient interest or principal return for his investment to warrant him going ahead with the deal, and I received the same answers repeatedly. Certainly there were a few who did accept the plan and whose buildings were put up. * * * It was a case of being a poor investment and they just couldn't be sold on an idea that they should borrow money or build a building and spend their own money and then lease it to the Kroger Company without proper leasehold liability. * * *
"Q. Were you ever reprimanded in any way for insubordination or? A. No, the only thing that was ever said was that the company wanted more locations and they kept reminding me of that, but that is natural in the normal course of business. * * * They would like to have been under an expansion program if they could have gotten new buildings where they wanted them under their terms. * * * It would be a very good policy if it could be followed and you could obtain the results desired from that policy, but when the investors tell me the same story day in and day out, why, naturally you are bound to become discouraged. * * * I kept trying right along, that was my job. * * *
"Q. Up to that time (January, 1948) did anyone ever intimate to you or tell you that they were considering firing you? A. No. * * *
"Q. Did anyone ever tell you? A. No, except that they were dissatisfied in not getting enough locations.
"Q. They told you that many times, didn't they? A. That is right, that was on numerous occasions. * * *
"Q. Did you keep on working after receiving this letter (from Harvey, dated February 12, 1948), relying upon the bonus in the same manner and fashion as you did in 1947? A. Yes, sir."
Defendant called three witnesses: namely, Lawson Harvey, manager of defendant's Kansas City branch; Charles M. Upham, defendant's former division manager; and Harold S. De Coursey, division manager. Harvey testified that in accordance with an understanding between himself and De Coursey, plaintiff was put on probation in January or February of 1948, for a period of six to eight months; that he notified plaintiff that the company was dissatisfied with his work and unless he could produce results he would have to be discharged; that the decision to discharge plaintiff was made in October, 1948, but before he could tell plaintiff, the latter informed him that he was going to a hospital for an operation. Harvey said that he and Upham agreed that plaintiff should not be discharged until he regained his health and returned to work. All of defendant's witnesses admitted that plaintiff never failed to report for work; that he did not drink; that he encountered difficulties, but tried to carry out the company's policies. Harvey said that "all real estate managers run into *412 difficulties." De Coursey stated that "the branch profits here in Kansas City for 1947 and 1948 were such that the maximum bonuses could be paid to the employees who were entitled and designated in this bonus plan."
When plaintiff was recalled for further examination and asked whether he was put on probation in the early part of 1948, he said: "I was told all the time that they weren't happy with the number of locations that they were receiving. * * * And as for any actual period of probation, I don't remember when or where I was told that. It is possible that I was. If that was in January of '48, I had forgotten all about it by the end of the year." So much for the evidence.
Defendant contends that the court erred in overruling its motion for a directed verdict at the close of all the evidence. In support of this contention defendant states that plaintiff's employment was for an indefinite period and therefore terminable at the will of either party; that the "Branch Key Men's Incentive Plan for 1948" did not alter his contract of employment; that he did not assume any additional duties "by reason of the 1948 plan" or agree to relinquish his right to quit at any time; that "the promise of a bonus represented merely a gratuity on the part of the employer, without consideration of any kind moving from the employee"; that plaintiff was not entitled to a bonus for the year 1948 because the payment of a bonus was conditioned upon his remaining in defendant's employ until the end of the year, and his discharge prior to that time disqualified him; that his employment was terminated for cause and there was no evidence to show that he was wrongfully discharged.
It seems to be the general rule that where one enters into a contract of employment under an agreement that he shall be paid a certain salary by the week or month or some other stated period and, in addition thereto a bonus, in case he serves for a specified length of time, the promise to pay the bonus is enforceable if the employee serves the stipulated time. Warren v. Mosher, 31 Ariz. 33, 250 P. 354, 49 A.L.R. 1311; Scott v. J. F. Duthie & Co., 125 Wash. 470, 216 P. 853, 28 A.L.R. 328, and Anno. 331; Williston on Contracts, Rev. Ed. Vol. One, sec. 130 B; 35 Am.Jur., Master and Servant, § 71, p. 502. This is true where the contract contemplates a continuance of the employment for a definite term, and the promise to pay a bonus is made at the time the contract is entered into. Willoughby Camera Stores v. Commissioner of Internal Revenue, 2 Cir., 125 F.2d 607; 35 Am.Jur., supra. The weight of authority supports the view that where the employment is for an indefinite period, but "the employee enters upon or continues in the service under an offer of a bonus if he remains therein for a certain time, his service, in case he remains the required time, constitutes an acceptance of the offer of the employer to pay the bonus, and after that acceptance the offer cannot be withdrawn, but may be enforced by the employee." Anno. 28 A.L.R. 331, 333. See also George A. Fuller Co. v. Brown, 4 Cir., 15 F.2d 672; Wellington v. Con P. Curran Printing Co., 216 Mo.App. 358, 268 S.W. 396.
The right of an employee to a promised bonus, to be paid on a future date, cannot be defeated by a wrongful discharge before that date, unless the contract provides otherwise; e. g., that the employer may discharge the employee at any time without cause and that no bonus shall be payable in the event of his discharge, or that the employment may be terminated at any time and that the payment, on such termination, shall be entirely in the discretion of the employer. Fontius Shoe Co. v. Lamberton, 78 Colo. 250, 241 P. 542; Montgomery Ward & Co. v. Guignet, 112 Ind.App. 661, 45 N.E.2d 337; Muir v. Leonard Refrigerator Co., 269 Mich. 406, 257 N.W. 723; 56 C.J.S., Master and Servant, § 98, p. 529. In the absence of such a provision in the contract, it is generally held that where there is a valid and enforceable promise through the offer of a bonus and acceptance by the employee's continuing in the service, and the employment is terminated by the employer through no fault of the employee, the latter is entitled to a proportionate part of the bonus, according to the time served. This is true even though the *413 employment was for an indefinite term and therefore terminable at will. Where, however, the employee voluntarily quits or is discharged for a reason attributable to his own fault, he cannot recover any part of the bonus. Griffin Grocery Co. v. Thaxton, 178 Ark. 736, 11 S.W.2d 473; Roberts v. Mays Mills, 184 N.C. 406, 114 S.E. 530, 28 A.L.R. 338, and Anno. 346; Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 44 L.R.A.,N.S., 1214, 35 Am.Jur., Master and Servant, § 80, p. 511.
Defendant contends that plaintiff is not entitled to a bonus for the year 1948 because he did not "comply" with the provision of the "Branch Key Men's Incentive Plan for 1948" which reads as follows: "The key man must remain in the employ of the company for the full year in order to be eligible for a bonus. If he leaves the company during the year for any reason whatsoever, except death, he shall not be entitled to any payment under this plan. In case of death the bonus will be prorated for the part of the year that he was in active full-time service with the company." It seems clear to us that the word "leave," as used in this provision, means resign, or voluntarily quit or give up the employment, and that the words "for any reason whatsoever" do not alter or enlarge that meaning. Hence the provision is not applicable in the instant case where it is conceded that plaintiff was discharged. The following cases support this conclusion. Gardner v. Metropolitan Life Ins. Co., 225 Mass. 439, 114 N.E. 717; Price v. Minot, 107 Mass. 49; Muesling v. International Ry. Co., 85 Misc. 309, 147 N.Y.S. 177. The cases cited by defendant are distinguishable on the facts. They are Fontius Shoe Co. v. Lamberton, supra; Montgomery Ward & Co. v. Guignet, supra; Muir v. Leonard Refrigerator Co., supra.
As stated, plaintiff was paid a bonus of $1038 at the end of 1947. In February, 1948, defendant notified plaintiff, in writing, that he was to participate in the bonus plan for 1948. Plaintiff, who was employed for an indefinite time, was not obligated to remain throughout 1948; but he did continue in the service until he was discharged, and he testified, in effect, that he did so in reliance on the promise to pay him a bonus if he remained in the employ of defendant until the end of the year, and the branch profits were sufficient. Defendant's evidence showed that the profits of the Kansas City branch for 1948 were such that the maximum bonuses could be paid to the employees who were entitled to them. It is clear, therefore, that plaintiff would have been entitled to the maximum bonus of $1500 if he had served as branch real estate manager until the end of the bonus period. But his employment was terminated by defendant before that date. According to the authorities cited above, he was entitled to an amount proportionate to the time he served in 1948, if his discharge was wrongful; but if he was discharged for sufficient cause, he is not entitled to any part of the bonus. Hence the decisive question is whether the termination of plaintiff's employment was wrongful or for sufficient cause.
In support of its contention that plaintiff failed to make a submissible case, defendant argues that there was no evidence to show plaintiff was wrongfully discharged; and that plaintiff's own testimony shows that his employment was terminated for cause. Defendant also relies upon the testimony of Harvey that plaintiff was put on probation in January or February of 1948; that the decision to discharge him was made in October of 1948, but that plaintiff was not informed of the decision until November 11, 1948, because he went to a hospital for an operation; and defendant also relies upon other testimony of its own witnesses. In determining whether plaintiff made a submissible case we must, of course, view the evidence in the light most favorable to plaintiff and disregard defendant's evidence unless it aids plaintiff's case.
It appears from the evidence of both parties that the officers of the defendant company had decided to expand the operations of the business in the Kansas City branch. In order to carry out this plan, and in accordance with the established policy of defendant, plaintiff was instructed to find locations for new stores and to obtain five-year leases on suitable store buildings.
*414 Plaintiff obtained only four such leases during the time he served as real estate manager of the Kansas City branch, i. e., from April 23, 1947 to November 13, 1948. As we have seen, he testified that he worked hard but "ran into a lot of trouble in trying to attract investors on only a five-year leasehold"; that "it was case of being a poor investment and they couldn't be sold on the idea"; that he became discouraged when he heard "the same story day in and day out," but "kept trying right along." Plaintiff admitted with commendable frankness that his superiors kept reminding him that more store buildings were needed to carry out the expansion program; and that they told him on numerous occasions that they were dissatisfied with his work. When recalled for further examination, plaintiff said that he "was told all the time that they weren't happy with the number of locations that they were receiving"; and when asked whether he was put on probation in the early part of 1948, he said: "I don't remember when or where I was told that. It is possible that I was."
Plaintiff had the burden of proving that his discharge was wrongful. Craig v. Thompson, Mo.Sup., 244 S.W.2d 37. While the evidence tends to show that he worked hard and attempted to perform his duties to the best of his ability, we find no evidence in the record from which it could reasonably be inferred that he was discharged arbitrarily and without sufficient cause. Plaintiff's own testimony shows that he did not produce the results expected of him and that he was told "all the time," or at least "on numerous occasions" that his work was unsatisfactory. It may be true, as plaintiff said, that his failure to obtain more than four leases on store buildings was due to defendant's policy in regard to five-year leases, but this does not show that he was discharged arbitrarily and wrongfully. The defendant had the right to adopt such a policy; and it had the right to require him to follow that policy in negotiating for leases. It is clear that there was no evidence supporting the claim of plaintiff in his petition that defendant discharged him for the sole purpose of depriving him of the amount of bonus that would have been payable to him had he served until the end of 1948. The fact that he was not discharged until November 13, 1948, does not of itself warrant the conclusion that his employment was terminated without sufficient cause. After considering all of the evidence favorable to plaintiff, we conclude that plaintiff failed to make a submissible case. The judgment should be reversed.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the Court. The judgment is reversed and the cause remanded with direction to enter judgment for defendant.
All concur.