[Civ. No. 13788. First Dist., Div. One. Nov. 1, 1948.]

WILLIAM A. MAGEE, Appellant, v. SAN FRANCISCO BAR PILOTS BENEVOLENT AND PROTECTIVE ASSOCIATION, Respondent.

L. L. James and Carl E. Day for Appellant.

Lyman Henry, Stephen McReavy and Hall, Henry & Oliver for Respondent.

PETERS, P. J.—Plaintiff brought this action for a declaration of his rights under the articles of incorporation and by-laws of defendant, seeking a determination that he is entitled to an "associate" membership in defendant and, as such, entitled to certain pension rights. Plaintiff appeals from a judgment determining that he is entitled to none of the claimed rights.

The factual background of this controversy is as follows: To guide ships in and out of San Francisco navigators with

a special knowledge of these waters are required. As early as 1870, by statute, there was created a Board of Pilot Commissioners with power to appoint not more than 20 pilots for this purpose. (Stats. 1869-1870, ch. 243, p. 344.) This statute, or its successor, has been applicable during all periods here involved, and the limitation to 20 pilots is still the law. (Harb. & Nav. Code, § 1160.) The pilots are examined yearly by the board and licenses are issued for one-year periods.

In 1910, the pilots formed a corporation under the name of the "San Francisco Bar Pilots Benevolent Association," which, in 1925, was succeeded by the defendant, the "San Francisco Bar Pilots Benevolent and Protective Association." These corporations, whose members consist of the pilots, own the pilot boats and rent them at a flat monthly rental to the pilots, and perform the other functions set forth in the articles and by-laws. The pilots are stationed on a boat owned by the corporation outside the Golden Gate, and, as an incoming ship arrives, in rotation, a pilot is rowed to the ship, he boards the same, and pilots it to its destination. A ship leaving the harbor is accompanied by a pilot through the Golden Gate and over the bar, and then the pilot leaves the ship and goes over to a pilot boat. (Harb. & Nav. Code, §§ 1160-1164.) The pilotage fees, which are fixed by statute, are pooled by the pilots, 5 per cent of such fees are paid to the Pilot Commissioners, $400 is paid to defendant corporation for the use of its boats, other expenses of defendant corporation are deducted, and the balance divided equally among the pilots monthly.

The first corporation, the San Francisco Bar Pilots Benevolent Association, had no provision at all for the payment of pensions to its members. The corporate setup of the defendant corporation is different from that of its predecessor. The articles provide that there shall be two types of members— regular, and associate—and the articles and by-laws provide the qualifications of such members, how they shall be selected, and also provide for the collection of funds from the regular members to pay the associate members a pension.

Plaintiff was duly appointed a bar pilot on May 17, 1928. He paid the then required membership fee of $5,000. During the years he served as a regular member of the corporation there was deducted from his earnings the proportionate expenses of maintaining the pilot boats, and his share necessary to pay the pensions of the associate members. The last associate member died in 1944, and thereafter no deduction was made

from plaintiff's earnings for the payment of any pension. In other words, no pension fund was ever created. The pension paid each month to the associate members was paid from that month's deductions made from the regular members' earnings.

On November 12, 1945, plaintiff ceased active duty as a bar pilot because of injuries allegedly received while ascending, in the performance of his pilot's duties, the rope ladder of a ship. On December 5, 1945, plaintiff applied, in proper manner, for an associate membership in defendant, and for a pension. The application was denied because 15 of the 17 members present (three not being at the meeting) voted "no." Thereupon, plaintiff brought this action. The lower court determined that, under the articles and by-laws of defendant, plaintiff was not entitled to a pension; that his only right is to receive, upon surrender of his membership, the sum of $5,500, which is the value of his interest in the property of the corporation, or the sum of $7,500, which is the present regular membership fee.

Defendant states in its brief, and plaintiff admitted at oral argument, that on October 15, 1947, plaintiff surrendered his certificate of regular membership and received $7,500 for it.

Plaintiff complains because the trial court made no specific finding on the issue of whether his present disability was caused by injuries received while performing pilot duties. The finding on this issue is that for many years plaintiff had suffered from arteriosclerosis and was so suffering in November, 1943, when he suffered the claimed injury; that plaintiff did not discover that he suffered from such condition until December, 1943. But the failure to make this finding more specific is immaterial because defendant does not claim that the judgment rests in any degree on any express or implied finding that the present disability was not caused by the injury, and is willing to concede, for the purposes of this case, that the present disability is a result of the injury claimed to have been suffered in November, 1943. The theory of the trial court was that, regardless of how or when the injury was received, the articles and by-laws of defendant are clear and unambiguous; that they validly provide that one can become an associate member only by a two-thirds vote of the regular members; that the denial of plaintiff's application to become an assoicate member "was simply the rejection of an application which said regular members might in their charity have allowed, but which was not a basis for legal liability."

The basic problem involved is the proper interpretation of the articles and by-laws of defendant insofar as they relate to associate membership and the right to a pension. Plaintiff contended in the trial court, and contends here, that he had an absolute right to be elected an associate member, and so an absolute right to a pension. Defendant contends, and the trial court found, that plaintiff had no absolute right to become an associate member, and that election to such membership rested in the discretion of the regular members.

Article sixth of the articles, after first providing that there shall be two classes of members, regular and associate, and after providing that the regular members shall consist of the duly approved bar pilots, provides *"the associate members* shall be persons who have been such regular members, or members of the San Francisco Bar Pilots Benevolent Association, a California corporation, and *have been chosen or elected and qualified* as associate members *as provided by the by-laws."* (Italics added.)

The pertinent provisions of the by-laws are as follows:

Article II, section 3: "Any member or former member of the San Francisco Bar Pilots Benevolent Association, a California corporation, who has resigned as a San Francisco Bar Pilot in the calendar year 1925 and prior to the first day of July, 1925, may become an associate member by election by the Board of Directors and signing these by-laws.

"Any regular member of this Association who has paid all his dues and assessments and is in good standing in the Association and has served for twenty years continuously as a Pilot for the Port of San Francisco, or has reached the age of sixty-six years, or has become permanently disqualified from serving as a Pilot from injuries received while discharging his duties as such Pilot, *may apply* to the Association for an associate membership . . .

"At no time shall there be more than five associate members for reasons other than said disqualification for injuries received.

*"A two-thirds vote or the written consent of two-thirds of the whole of the regular membership is necessary to elect as associate member any person,* other than those elected by the Board of Directors as herein provided. After such election, he shall not become an associate member unless or until he has ceased to be a licensed Bar Pilot and a regular member and surrendered his certificate of regular membership." (Italics added.)

Article XVIII of the by-laws provides that the corporation shall charge each regular member a percentage of his monthly income for the benefit of the associate members, and, further, that such benefits shall be paid to the associate members as long as they should live; that the corporation should act as agent for the associate members in collecting these percentages from the regular members; that each regular member should sign the by-laws, and, by signing them, such member agrees to pay such percentages to the associate members.

The trial court found that these by-laws were clear and unambiguous, and valid. It is plaintiff's main contentions that such by-laws are not clear and unambiguous; that they should not be literally interpreted; that a literal interpretation is in conflict with the fundamental purposes of defendant corporation, is not reasonable, violates defendant's property and contract rights, is violative of public policy and that defendant is estopped from urging such literal interpretation; that such interpretation results in making defendant's contract void for want of consideration and of mutuality.

Plaintiff finds himself in an untenable position. If the provisions quoted are clear and unambiguous and are to be given their literal meaning, he has no case. They clearly provide that to become an associate member the retired regular member must be elected by a two-thirds vote. The by-laws, in language too clear for misunderstanding, provide that the determination of whether an associate member shall be elected rests in the discretion of two-thirds of the regular members. On the other hand, if it be assumed that parol evidence was admissible to ascertain the true intent of the drafters and to ascertain the purpose of the provisions, plaintiff likewise cannot recover. This is so because, according to the evidence, the main purpose of organizing defendant in 1925, was not to provide a permanent system of retirement for old or disabled pilots as contended by plaintiff. The evidence most favorable to defendant shows that when defendant was organized in 1925, and the articles and by-laws drafted to provide pensions for associate members, the purpose of the regular pilots was to prevent an increase in their number and a decrease in income. As already pointed out, the income of all pilots is pooled. The greater the number of pilots, the less each will receive. The law, in 1925 as now, limited the number of pilots to 20. In the year 1925 there was great pressure by the Legislature, from within the organization itself, and from other sources, to increase permanently, by amendment of the

statute, the number of regular pilots from 20 to 25. Under such circumstances the then regular members came to the conclusion that the lesser of two evils would be to induce five of their oldest members to retire on the promise to pay them a pension in order to make room for five new members. Thus, the new setup was not intended as a pension system for all old and disabled pilots, but was intended primarily to meet an existing threat and to provide a system that could meet any similar threat in the future.

That this was the basic purpose of the 1925 provisions is supported not only by the testimony of one who was a member when the change was made in that year, but also by related evidence. It is admitted that the five who were immediately retired on pension when the new organization was formed in 1925 were the only ones who have ever been associate members. The last of this original five died in 1944, and since then no one has received a pension. The evidence also shows that other regular members have retired and not sought associate membership. It also shows that, aside from the original five, but one other regular member has ever sought associate membership, and his application, like that of plaintiff, was voted down by the members, plaintiff being one of those to vote ''no'' on the application. There is also evidence that no pension fund was ever created, and that when the last of the original five died in 1944 the contribution for pension purposes was discontinued. Thus, the parol evidence and the literal and plain meaning of the by-laws and articles are consistent. They show that this organization never intended to set up a pension plan for all disabled or aged pilots, but intended to meet an attack that was then being made that would have materially reduced the income of its regular members. Those members were willing to contribute a small portion of their income to pension off five of their aged members rather than have their income reduced from one-twentieth of the total net take to one-twenty-fifth.

These conclusions dispose of most of the objections raised by plaintiff. They dispose of his contention that the main purpose of founding the defendant association was to pay pensions to all of the old and disabled pilots. That contention is completely refuted by the language of the articles and by-laws, and by the parol evidence to which reference has been made. ▪ Plaintiff cites many cases to the effect that by-laws and pension provisions of such an association must be construed reasonably, that they must operate on all members

equally, and that they must not make arbitrary discriminations. We emphatically agree with the rules of the cases cited, but such rules are to no avail to plaintiff. These by-laws are clear and unequivocal. Particularly when their background is understood they are not unreasonable, they do operate on all members equally, and no arbitrary discrimination exists.

Plaintiff also cites many cases which he contends support the proposition that where language of a statute or by-law is susceptible of being construed so as to leave the payment of benefits to the discretion of a person or body, such statute or by-law will not be so construed, but rather it will be held that the general object to be attained will control and that the ultimate determination as to the right to benefits is for the courts. Again, the plaintiff has assumed the general object of the by-laws, and such assumption is contrary to the facts. When the object here sought to be attained is understood, there is no reason to distort the language used or to disregard it. Most of the cases cited are cases where the right to the pension was not a mere gratuity, but was vested. Thus, in *Robinson* v. *Irish-Amer. B. Soc.*, 67 Cal. 135 [7 P. 435], the constitution of the benevolent society provided that no money should be paid on any claims except upon the order of the trustee. The court inferentially held that plaintiff, if sick, would have a right of action on his claim even though the trustee rejected it. But the constitution of the association expressly provided that any member ''who is sick and receives the doctor's certificate, shall be entitled to eight dollars per week.'' Thus, in that case, the member was entitled to his benefits if sick, regardless of the action of the trustee. A comparable situation cannot be spelled out of the by-laws under consideration. In all of the cases cited to prove that the apparent discretionary power of a body to award a benefit was mandatory, unlike the present case, there could be spelled out of the articles and by-laws a vested right in the beneficiary to the claimed benefit. *Supreme Council Catholic Benevolent Legion* v. *Grove*, 176 Ind. 356 [96 N.E. 159, 36 L.R.A.N.S. 913] is typical. There a by-law specified that a certain amount ''shall'' be paid upon the death of a member, and one-half that amount ''may'' be paid in case of permanent disability. The association denied the claim of a disabled member. In holding that the word ''may'' should be interpreted as ''shall,'' the court relied upon a recitation in the constitution of the association to the effect that one of the basic purposes of the association was to aid members by

creating a fund "for the relief of sick and distressed members." The court held that, if the by-law be literally interpreted, such interpretation would defeat this main object of the organization. In the instant case there was no such stated purpose, there was no fund created, and the articles referred to the by-laws as specifying the method of election of associate members.

Plaintiff cites many cases to the effect that pensions, wherever possible, will not be construed as a gratuity. One of the latest cases so holding is *Hunter* v. *Sparling*, 87 Cal.App.2d 711 [197 P.2d 807]. But, in any case, the rights must be measured by the contract involved. Thus, in *Estate of Henderson*, 17 Cal.2d 853 [112 P.2d 605], the general rule, relied upon by plaintiff here, is stated as follows (p. 859): "If a group of individuals agree to contribute equal amounts into a fund to be used for the benefit of all, such a group may well be said to be non-charitable in nature because each individual is providing only for his own welfare and does not intend to make a free contribution toward the assistance of others." But, in that very case, the court went on to point out the differences between a true mutual benefit association where the members have a contractual right to receive benefits, and an association where the members have no such contractual rights. At page 860 it is stated: "A true mutual benefit association, however, is based upon reciprocal contracts and requires that a member receive benefits as a matter of right. Members of the Order of the Eastern Star who pay their required assessments acquire no right, contractual or otherwise, to be admitted to the Home, even after fulfilling the entrance requirements. *A member must be nominated by his local chapter and selected by the trustees of the Home before he can gain admittance,* and only one member out of every 500 in a local chapter can acquire residence in the Home at the same time. A member is admitted to the Home because his case is deserving and not because his previous contributions have given him a contractual right to admission." (Italics added.)

This language is directly applicable to the plaintiff in the instant case.

Another case directly in point is *Pool* v. *Brotherhood etc.*, 143 Cal. 650 [77 P. 661]. It was there held that a member's rights had to be measured by his contract, and if that contract clearly provided that a right to a benefit was dependent upon the approval of a board, he had no enforceable

right without such approval. At page 654 it is stated: "This is not a case of an arbitrary adjudication by the officers of a benevolent association declaring a forfeiture of property, or of vested rights. It is simply the rejection of a claim that the lodge might in its charity have allowed, but it was agreed that such a claim should be in the discretion of the lodge and not the basis of legal liability. *Plaintiff may have been unfortunate in becoming a member of a brotherhood that is not benevolent, but the court cannot undo his actions in this regard.*" (Italics added.)

■ The contention that if the by-laws be literally construed they violate public policy is patently unsound. The argument is that it is the policy of the law to secure competent pilots, and that a literal application of the by-law would compel pilots to remain on the active list regardless of infirmities. The obvious answer is that, under the law, pilots must be licensed, and the Board of Pilot Commissioners is required to license only qualified pilots. All pilots are examined yearly and licenses are only issued for one year at a time. There is no statute requiring the corporation to provide any pension plan at all. Under such circumstances it is no violation of law or of public policy to make the right to a pension dependent upon election to associate membership.

■ An argument is made to the effect that defendant is estopped from insisting on a literal construction of the by-laws because, so it is claimed, in five enumerated particulars in the past defendant has departed from a literal construction of its by-laws. The argument is unsound because none of the five claimed departures had to do with waiving the two-thirds vote of the regular members, and because the evidence shows that the only other application filed by a regular member to become an associate member (besides that of the original five and plaintiff's own) was that of Captain Swanson, and it was denied for failure to secure the required two-thirds vote. There is not one word of evidence that there ever was the slightest deviation from a literal and proper interpretation of the questioned by-law. There is no basis for an estoppel.

■ The contention that if the by-law in question be considered a contract, such contract is invalid for lack of consideration and mutuality is also without merit. The argument is that plaintiff was bound to pay for the pensions of others, but that his right to a pension depended upon the mere whim or caprice of one-third of the members. Numerous cases are cited that establish the principle that where a promisor

agrees to perform at his mere caprice, the promise is of no value and cannot constitute a legal consideration. Those cases are sound, but they are not here applicable. The argument assumes that the sole consideration for plaintiff's payments was the contingent possibility of securing pension rights for himself. As already pointed out, the real consideration was to prevent an increase in the number of pilots. ■ During all the years plaintiff was a regular pilot (1928-1945) he received a very direct financial benefit from the arrangement. Had the number of pilots been increased to 25 or more, plaintiff's net income would have been far less than it was while there were only 20 pilots, even adding the deductions made for the pensions of associate members. Plaintiff agreed to the by-laws. He knew what they provided. He accepted the material benefits they provided. He is now in no position to avoid them.

■ The next contention of plaintiff is that, independent of his right to a pension, he was entitled to $10 a day sick benefit from the association beginning 15 days after his injury on November 12, 1945, and lasting until he ceased to be a regular member by receiving the $7,500 membership fee, which, it is claimed, was received on October 15, 1947. This contention is based on the following by-law as amended: ''A regular member of the San Francisco Bar Pilots Benevolent and Protection [sic Protective] Association absent from duty as a Pilot on account of sickness, injury or suspension by the Pilot Commissioners shall receive full pay for each day's such absence, not exceeding fifteen (15) such days' full pay per year. . . . During any additional days off duty from sickness, injury or suspension in excess of said fifteen (15) days, such member shall be paid, by the Association, Ten Dollars ($10.00) per day while absent from duty on such additional days.'' The by-laws also provide (art. V, § 2) that when a regular member ceases to be a pilot otherwise than by death, the secretary, within 60 days, shall pay him an amount equal to the value of his interest in the company or the member may elect to receive an amount equal to the then membership fee. Upon such payment, it is provided, his regular membership shall cease.

The trial court found that plaintiff remained a bar pilot ''until on or about the 22d of August, 1946, at which time his license was not renewed by the Board of Pilot Commissioners. Plaintiff's license as such Bar Pilot, however, has

not been suspended or revoked by said Board.'' There is no doubt, and plaintiff admits, that he received the $10 a day from the date of his claimed injury, plus 15 days (injury November 12, 1945—$10 payments started November 27, 1945) up to September 1, 1946—nine days after his failure to renew his license. He now claims that he is entitled to the continuance of these payments until he received his $7,500 membership fee on October 15, 1947, and then ceased to be a regular member.

The record shows that, although the Pilot Commissioners only issue licenses for one year, which in plaintiff's case expired August 22, 1946, the board, in case of temporary disability of a pilot at the time of renewal, does not revoke the license but will give the pilot further examinations at three-month intervals not to exceed a year or until permanent incapacity is indicated. On April 10, 1947, the board notified plaintiff that, unless he offered evidence of restoration to good physical condition and applied for a renewal, he would lose his right to a renewal. He made no such application. The complaint in this case was filed on July 11, 1946.

It is quite clear that the articles and by-laws of defendant intended to provide sick benefits for those regular members who were temporarily incapacitated, and that the board would allow a year's grace before revoking a license. Here the plaintiff was permanently incapacitated. He received the sick benefits for nearly a year. He was entitled to no more. He cannot complain because the secretary of defendant failed to comply with the provision of the by-laws relating to the payment of the membership fee to the member within 60 days of his ceasing to be a pilot. Here the plaintiff was demanding the right to become an associate member, and filed a complaint to that effect in July, 1946. He was paid his sick benefits up to September 1, 1946. Certainly, under such circumstances, the plaintiff cannot avail himself of the 60-day provision of the by-laws. Such provision cannot be interpreted as a justification for a regular member dragging out indefinitely his regular membership while attempting, by legal action, to become an associate member. This would unduly prolong the period of being paid sick benefits which were intended only for a regular member temporarily incapacitated. Here the payments were made for almost a year after plaintiff admits he was permanently disabled.

In conclusion plaintiff asks that if it be adjudged that he is not entitled to a pension, then it be decreed that he

is entitled to an accounting and the return of all money he has contributed to the pensions of others. The trial court concluded that plaintiff was "not entitled to the return of any part of the monies collected from him by defendant as agent for the associate members of defendant. Plaintiff fully acquiesced in all such collections and payments at the time thereof and any claim he might otherwise have with respect thereto has long been barred by laches." This conclusion is amply supported by the evidence and is a complete answer to the contention under consideration.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied December 1, 1948.