[Civ. No. 18018.   First Dist., Div. One.   Mar. 17, 1959.]

HELEN D. FRIETZSCHE, Appellant, v. FIRST WESTERN BANK AND TRUST COMPANY (a Corporation), Respondent.

Courtney L. Moore and William A. Lahanier for Appellant.

Orrick, Dahlquist, Herrington & Sutcliffe for Respondent.

BRAY, J.—Plaintiff appeals from a judgment entered on an order sustaining demurrer to her complaint without leave to amend.

### QUESTION PRESENTED

Is plaintiff widow entitled to a pension under defendant's pension plan? In substance, this question depends upon whether the plan is for retirement benefits or death benefits.

### FACTS

Plaintiff's deceased husband, Albert, was employed by defendant from 1918 until his death July 15, 1955. He was then 54 years and 6 months of age, and a vice president. Defendant's pension plan was then in effect. Albert designated plaintiff as a beneficiary under section 6(d) of the plan, hereafter quoted. Plaintiff sued for declaratory relief and also for monthly payment of half the amount Albert would have received upon retirement after he reached the age of 55. (It will be noted that he died before reaching that age.)

### WAS THE PLAN A DEATH BENEFIT ONE?

An examination of it clearly shows that it was not. The sections of the plan principally involved here are sections 6(c) and 6(d).

"(c) *Deferred pension on termination of service.* If, upon termination of service prior to his normal retirement date, a member has attained the age of forty-five (45) years and has completed an aggregate of fifteen (15) years or more of credited service, he shall be entitled, at normal retirement date, if then living, to receive a pension which shall be the actuarial equivalent of that portion of his normal pension which shall have accrued at the time of termination of his service. . . ."

"(d) *Optional pension.* A member desiring *continuance* of pension payments to a designated beneficiary following his death may, in writing, elect to *convert* his pension provided in Section 6(a), (b) or (c) on an actuarial equivalent basis, into a reduced pension for himself for life, and following his death a life pension for the designated beneficiary, if living at the time of his death, in the same or a lesser amount. Such written election must be filed with the Bank at least six (6) months prior to normal or early retirement date, except that a member retiring within twelve (12) months after July 1, 1954 may, at any time prior to his retirement date, file such an election or may change or withdraw any election filed prior to July 1, 1954." (Emphasis added.)

Defendant's employees remain members of the pension plan until they retire, die, withdraw or cease to be employees (§ 2). Normal retirement is at 65, but where an employee has 15 years service and is incapacitated or has 20 years service,

upon written application to defendant and with the consent of the pension committee, he may retire prior to 65, but after he has reached 55 (§ 4). Defendant bears the costs of this plan (§ 5).

■ Pension plans are to be liberally construed in favor of the employee. (*Klench* v. *Board of Pension Fund Commrs.* (1926), 79 Cal.App. 171, 186 [249 P. 46].)

■ The general rule is that pension plans, formulated by an employer, are construed most strongly against the employer. (*Sigman* v. *Rudolph Wurlitzer Co.* (1937), 57 Ohio App. 4 [11 N.E.2d 878, 879].

Section 11 of the plan provides that no person shall have any rights in the pension plan ''except as, and only to the extent expressly provided for in the Plan.'' (See also *Magee* v. *San Francisco Bar Pilots etc. Assn.* (1948), 88 Cal.App.2d 278 [198 P.2d 933].)

■ Plaintiff contends that, as her husband was over 45 and had more than 15 years service, he qualified for a deferred pension under section 6(c) and that his death constituted ''termination of service prior to his normal retirement date'' (because death is not expressly excluded from the plan) and that plaintiff qualifies as a beneficiary under section 6(d). A study of section 6 shows that under the plan no one is eligible for a pension prior to age 55 and that the pension described in section 6(c) is a deferred one, payable only if an employee whose service is terminated prior to his normal retirement age (age 65) is living at such age. The plan is geared to retirement benefits. There is no language indicative of an intent to confer death or prospective retirement benefits on a deceased employee's widow. Section 1(j) defines pensions as ''sums payable *after retirement* to a member, former member, or *beneficiary*.'' (Emphasis added.) Section 6(d) conditions a beneficiary's rights upon rights of members of the plan to a pension under section 6(a), (b) or (c). Therefore a widow must first show that her husband was entitled to a pension.

The basic pension provision is contained in section 6(a), providing for a normal pension upon retirement at age 65. Sections 6(b) and 6(c), involving retirement or termination of service prior to age 65, provide for reduced pensions calculated on the basis of what would have been the normal pension. Section 6(b) expressly refers to retirement. Since Mr. Frietzsche did not retire, he was eligible, if at all, only under section 6(c), which refers to termination of service, as opposed

to retirement. Under section 6(c), one reaching 65, who was an employee for at least 15 years and was at least 45 years old when leaving defendant's employ, is eligible for a pension. It seems clear that section 6(c) expressly conditions eligibility for a pension upon reaching age 65—— ''. . . he shall be entitled, at normal retirement date [age 65 according to section 4], *if then living,* to receive a pension. . . .'' (Emphasis added.) Therefore section 6(c) actually does not contemplate a pension upon termination of service, but rather upon normal retirement as in section 6(a). Only in section 6(b) is a pension payable prior to age 65 contemplated. Therefore, on the face of the plan and, specifically, section 6(c), plaintiff's husband was not eligible for a pension. It is inferentially clear that death is not contemplated as a type of retirement where the pension in section 6(c) is' payable only at normal retirement date if the one eligible for a pension is then living.

Section 6 (d) does not provide for a distinct pension. Rather, it provides that a member, ''desiring *continuance* of pension payments . . . following his death,'' (emphasis added) may convert his normal pension under section 6 (a) or the reduced pension under section 6 (b) or 6 (c) into a reduced pension for himself for life and thereafter to a designated beneficiary for life. It is clear one must first be eligible for a pension under section 6 (a), 6 (b) or 6 (c) in order for section 6 (d) to be applicable.

There cannot be a ''continuance'' of payments until payments start, and for the widow to have a pension the employee husband must first be entitled to a pension.

That section merely provides a method for spreading the pension an employee is entitled to under section 6 (a), (b) or (c), over the lives of two people. The written election under section 6 (d) is merely procedural, not a substantive act creating a new pension in the employee plus an additional pension in a beneficiary, as plaintiff contends. Far from creating a pension, the written election may be made before an employee is entitled to any pension. Moreover, should the beneficiary predecease the employee, the employee, under sction 6 (d) will receive the normal pension he would have been entitled to otherwise. This negatives the concept of the creation of new pensions.

If, as contended by plaintiff, a widow was entitled to a pension by the death of her employee husband regardless of whether at the time of his death he was entitled to a pension, there would be no need for the last paragraph of section 6 (d)

which states: "If selection of the optional pension has been properly made as herein provided, the amount of optional pension payable to the surviving beneficiary commencing after the death of the member, shall be paid, notwithstanding such member, upon request of the Bank, remains in employment after his normal retirement date and dies prior to actual retirement."

Plaintiff urges the applicability of a general rule of construction that a pension plan must be most strongly construed against the employer. A rule is only meaningful in its application and even should this court adopt the "general rule," under no reasonable interpretation can this plan be construed in favor of plaintiff. Considering the facts and plan incorporated in the pleading most favorably to plaintiff, the plan is clear and unambiguous on its face.

The demurrer to the complaint was properly sustained.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 13, 1959. Peters, J., did not participate therein.