Lilly M. MOLUMBY, May Belle Boyne, Lorenz S. Sartori, Individually and as Members of a Class, Plaintiffs-Appellants,

v.

SHAPLEIGH HARDWARE COMPANY, a Corporation, and Mercantile Trust Company, a Corporation, Defendants-Respondents.

No. 31765.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

Rehearing Denied Oct. 20, 1965.

William O. Cramer, Walter H. Poll-mann, St. Louis, for plaintiffs-appellants.

Shepley, Kroeger, Fisse & Shepley, George S. Hecker, Thompson, Mitchell, Douglas & Neill, William G. Guerri, St. Louis, for defendants-respondents.

ROY W. McGHEE, Special Judge.

This is a class action, brought by three named plaintiffs on behalf of themselves and as representatives of a class comprising all former regular, full time, salaried employees of Shapleigh Hardware Company, against Shapleigh Hardware Company, a corporation and Mercantile Trust Company, a corporation, defendants, asking the Court to construe a pension plan and trust instrument, define and adjust the rights and status of plaintiffs and for a money judgment.

The trial court sustained defendant Shapleigh's motion to dismiss plaintiffs' first amended petition for failure to state facts upon which relief could be granted, as to both defendants, and with prejudice, and plaintiffs have appealed to this court.

We shall refer to the parties as plaintiffs and defendants.

Plaintiffs allege that on or about December 1, 1955, the defendant Shapleigh duly adopted a pension plan known as Shapleigh Hardware Company Salaried Pension Plan and at about the same time, to implement the plan, entered into a trust agreement with Boatmen's National Bank of St. Louis and that thereafter the trustee was changed to defendant herein, Mercantile Trust Company. That Shapleigh made contributions to the trust fund for several years after its adoption but that it has failed for a period of three years and more to contribute the full current cost of the plan and that by reason thereof the plan and trust entered into inactive terms. Further, the Plan as amended, in addition to providing for normal and postponed retirement, made provisions for early retirement of a member without the consent of the company. That the defendant Shapleigh was under a duty to advise plaintiffs of the existence and identity of the Pension Committee and the terms and conditions of the Plan and Trust Agreement, which it did not do and that such information was willfully and fraudulently concealed from plaintiffs and the class they represent by the defendant Shapleigh and its agents with an intent to deny to plaintiffs and the class they represent the rights of retirement provided by the Plan and Trust; that by reason of the fact plaintiffs and the class they represent did not know of the plan they could not request early retirement, and by inference that they would have done so had they known of the conditions of the Plan with reference to early retirement.

Plaintiffs further plead that their rights to benefits were vested rights after plaintiffs had met the age and service requirements as provided by the Plan; that these rights may be exercised at any time by an employee after he qualifies; that the Plan does not require notice to the defendant Shapleigh or to the Pension Committee by an otherwise qualified employee of his intent to retire; that after plaintiffs had met the requirements of the Plan for any retirement benefits described in the plan, they cannot be deprived thereof by afterwards being discharged; that after plaintiffs were discharged demand for benefits was made and refused by defendants.

In the alternative, plaintiffs pleaded defendant Shapleigh Hardware Company, a corporation, had dismissed all its employees once members of the Plan, sold its inventory and was no longer engaged in the same type of business as formerly; that it has no Pension Committee; that no persons other than plaintiffs and the class they represent will be entitled to benefits under the Plan and Trust; that the management of the corporation has changed since the adoption of the Plan and Trust and that the Plan and Trust are terminated under the terms of the Plan and generally therefore, plaintiffs are entitled to benefits to be derived by liquidation of the trust fund.

Plaintiffs' petition also sets forth that no money or benefits of any kind have ever been paid to any person or persons under the terms of the Plan and Trust; that on information and belief no pension committee was ever appointed. Both the Plan and Trust Agreement were by reference made a part of plaintiffs' first amended petition. Plaintiffs prayed the Court to enter its declaratory judgment, defining and adjusting the rights of the parties under the two instruments and for judgment against defendant, Mercantile Trust Co., Trustee for any amounts found to be due plaintiffs and for general relief.

Section 19 of the Plan provided: "Neither the establishment of the Plan or Trust, nor any modification thereof, nor the payment of any benefits, shall be construed as giving any member or other person, any legal or equitable rights against the Company, the Trust, or the Committee, except as herein expressly granted to him."

Section 32 of the Plan provided: "A summary of this Plan shall be delivered

forthwith upon Treasury Department approval of this Plan to each present salaried employee of the Company who is not precluded by age from being or becoming a member in the Plan, * * *. A copy of the Trust Agreement and of the Plan shall be kept available by the Company for inspection at reasonable times by any salaried employee of the Company."

Section 26 of the Plan, among other things, provided: " * * * Within thirty (30) days after the permanent discontinuance of contributions to the Plan, the Committee shall give notice thereof to the Trustee and to all Members in the Plan."

Section 20 of the Plan provided: "Neither the establishment of the Plan or the Trust, nor any modification thereof, shall be construed as conferring any rights upon any member to be retained in the service of the Company, but, on the contrary, all members shall remain subject to suspension or dismissal, or discharge to the same extent as heretofore."

Section 12 of the Plan, in effect provided that vested rights upon termination of membership in the plan were to accrue only to those who had served under the Plan for 10 years or more and for 20 years or more. It is conceded that none of plaintiffs can qualify under this section.

We note that the Plan was to be handled in all of its many details by a Pension Committee to be appointed and to serve at the pleasure of the Board of Directors of defendant Shapleigh and that plaintiffs allege upon their information and belief that the Pension Committee was not duly appointed. The failure of defendant Shapleigh to appoint this committee; the fact that no notice whatsoever of the Plan and Trust Agreement were ever given to plaintiffs and that there is no allegation by plaintiffs that the Plan was ever approved by the Treasury Department; that the funding of the Plan was discontinued by defendant Shapleigh and that no payments of any sort were ever made to anyone under the

plan is a strong indication that the defendant Shapleigh, for some reason known only to the company, decided to abandon the Plan prior to making it operative and available to its salaried employees.

We here set forth paragraph 4 of the Plan for the purpose of showing that without the services of the committee it would have been next to impossible for the Plan to be operative: *"Pension Committee* The Board of Directors of the Company shall appoint, to serve at its pleasure a pension committee (hereinafter called the 'Committee') to consist of four individuals, who shall administer the Plan consistently with the provisions hereof and uniformly with respect to persons similarly situated. Such Committee shall have power and authority to construe the Plan and, without amending the Plan or Trust, to establish rules and regulations which shall be binding on all persons. Among other things, the Committee shall determine under the provisions hereof, all facts relative to the eligibility, membership, or benefits of any employee or member, the time and method of distributing such benefits and the names of the persons to receive them; provided, however, that no member of the Committee shall act as such on any matter concerning his own eligibility, membership, or benefits. In the course of the administration of the Plan and Trust, the Committee may rely upon any information furnished by the Company as being accurate and based on uniform practices, and may rely upon any information furnished by an employee, member, or beneficiary, or upon any information otherwise acquired by the Committee which at the time it believes to be authoritative. The acts of the Committee shall be expressed * * *. No committeeman shall be liable, in the absence of fraud on his part, for any act or omission in the performance of his duties hereunder, and neither the Company nor the Trustee shall be liable for any act or omission in pursuance of the directions of the Committee."

By Section 22 of the Plan it was provided that " * * * the Company shall be un-

der no obligation to continue such deposits or to maintain the Plan or Trust for any length of time." Section 23 provided: "Any person having any claim under the Plan will look solely to the Trust Fund for the satisfaction thereof. Neither the Company nor any of its officers, employees, or any member of its Board of Directors guarantees in any manner the payment of the benefits under the Plan." Further, the right was reserved to amend the plan, to suspend, or permanently discontinue the Plan at the pleasure of the defendant Shapleigh Hardware Co.

The provisions as to early retirement as amended in 1957 were that an employee who is a member of the Plan may retire, or may be retired by the Company at the end of any calendar month subsequent to the attainment by such member of the age of fifty-five years and prior to his normal retirement date, the date of such retirement being referred to as the "early retirement date."

Plaintiffs named were discharged as follows: Lilly M. Molumby on Feb. 12, 1960; Mary Belle Boyne on Jan. 9, 1959, and Lorenz S. Sartori on May 13, 1962. It stands admitted by the pleadings that plaintiffs did not receive any notice of the Plan and Trust Agreement nor of the names and identity of the members of the Pension Committee. At no point does plaintiffs' petition even by way of inference allege that Treasury Department approval of the Plan was ever given.

Plaintiffs' first contention is that even though the Plan and Trust are noncontributory and no consideration flowed to defendant Shapleigh from plaintiffs it was nevertheless the duty of defendant Shapleigh to inform plaintiffs of the rights of retirement given them by the Plan because the Plan and Trust together constituted an executed trust and such a trust needs no consideration to be valid, and further, the fact that plaintiffs did not know of the Plan and Trust did not affect its validity; that plaintiffs qualified for early retirement

under the Plan and when defendant company deliberately and willfully concealed information of the Plan and Trust from plaintiffs and discharged them, plaintiffs were thereby defrauded.

By way of an alternate theory, plaintiffs contend because of defendant Shapleigh having sold its assets and discontinued its business that defendant company is in fact defunct and that the Plan is therefore "de facto" terminated and plaintiffs have an enforceable interest in the pension funds.

Defendant Shapleigh contends that the Plan was but a proposed voluntary, noncontributory Plan and Trust and that in the absence of any communication of its benefits to and consideration from plaintiffs, plaintiffs had no enforceable rights thereunder.

 The motion to dismiss admits, for the purposes of the motion, all facts well pleaded and such inferences as are fairly deducible therefrom. 71 C.J.S. Pleading § 451, p. 906. Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572; Hall v. Smith, Mo., 355 S.W.2d 52. Conclusions of law and the construction and interpretation placed on documents pleaded in the petition are not admitted by the motion to dismiss. Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 149, 227 S.W.2d 708. Goodrich v. Rhodes, Mo.App., 261 S.W.2d 391.

Was there a duty on the part of defendant Shapleigh to notify plaintiffs of the existence of the Plan prior to their discharge? In 42 A.L.R.2d p. 471, it was said: "It has sometimes been contended, with little success, that acts of the employer in implementing its voluntary pension plan amounted to the establishment of a trust for the payment of pensions, so that eligible employees became trust beneficiaries entitled to equitable enforcement of the trust even in the absence of any contract obligation." And at page 464: "Under various noncontributory private pension plans by the terms of which employers have

announced their intentions to pay benefits to employees under certain conditions, but have attempted, by various forms of expression, to provide that the employees should acquire no enforceable rights under the plan, it has been held that such limitations were successful and that the pension provided for was a mere gratuity withdrawable at the employers' will."

The courts have held in reviewing voluntary private pension plans which are noncontributory that they are not enforceable contracts, but mere gratuities in which the employee does not have vested rights until he begins to receive benefits thereunder. In re Missouri Pac. R. Co., D.C., 49 F.Supp. 405; Dolan v. Heller Bros. Co., 30 N.J. Super. 440, 104 A.2d 860; Menke v. Thompson, 8 Cir., 140 F.2d 786.

▮ For such plans to become enforceable contracts the courts have required notification to and knowledge of the benefits on the part of the employee and consideration or continuance of employment in reliance upon the plan. This appears to be the view in Missouri. Wellington v. Con P. Curran Printing Co., 216 Mo.App. 358, 268 S.W. 396; Feinberg v. Pfeiffer Co., Mo.App., 322 S.W.2d 163. Since it stands admitted that plaintiffs did not know of the plan, they could not have relied thereon.

▮▮ The rights of the parties should be determined from the Plan and Trust. Magee v. San Francisco Bar Pilots Benev. & Protection Ass'n., 88 Cal.App.2d 278, 198 P.2d 933. Plaintiffs concede in their brief that they have no rights under the Plan except according to its terms. Turning to the Plan and Trust and after a full and careful consideration of both instruments we are unable to agree with plaintiffs that defendant Shapleigh owed any duty to plaintiffs to give them notice of the Plan and Trust. It is quite true that the Plan was adopted by Shapleigh and for a time, payments were made to the trustee; that an effective date for commencement of benefits to be earned was named in the Plan. But it is also true that payments by the company to the trustee were discontinued; that no notice was ever given to the employees of Shapleigh that the Plan was in effect; no summaries were prepared and made available to salaried employees of Shapleigh and no approval was ever shown to have been given by the Treasury Department of the Plan and, most important, no pension committee was ever appointed. How can it be said in the light of these facts that the Plan and Trust Agreement constituted an executed trust? It would perhaps be more accurate to say that defendant Shapleigh doubtless intended to create a pension fund; advise all its salaried employees of their rights therein; appoint a pension committee to administer the Plan and put the Plan into operation upon Treasury Department approval. For reasons unknown all things necessary to be done to put the plan into operation were not done by defendant Shapleigh, particularly the appointment of the pension committee to operate the Plan, and therefore the Plan was never put into effect as was intended back in 1955. We do not know what factors caused the defendant Shapleigh to change its intentions about the proposed Plan. We do know that the Plan reserved the right in defendant Shapleigh to amend, suspend or terminate the Plan for any reason or no reason at all, and at any time.

▮ The provisions as to notice to plaintiffs contained in Sec. 32 of the Plan do not aid plaintiffs for the notice was to be delivered to plaintiffs "forthwith upon Treasury Department approval of this Plan * * *" and plaintiffs do not plead such approval was ever given. Section 26, providing "that within 30 days after permanent discontinuance of contributions to the Plan, the *committee* shall give notice thereof to the trustee and to all members of the plan," is of no help to plaintiffs as no committee had ever been set up to administer the Plan. We do not re-write the Plan for the parties. We merely construe it as it is written. This notice was required un-

der certain conditions to be given by the pension committee, not by the defendant Shapleigh. Monterosso et al. v. St. Louis Globe-Democrat Publishing Co., Mo., 368 S.W.2d 481. Further, even if it could be assumed that defendant Shapleigh should have given notices to plaintiffs under this section, plaintiffs still have difficulty for they do not allege in their petition just when the period of "permanent discontinuance of contributions" arose, nor can we determine the date from the pleadings or any reasonable inference therefrom. It may well have been that all three named plaintiffs were discharged prior to the running of the 30-day period following the "permanent discontinuance of contributions."

■ We have no quarrel with the theory that "once an employee who has accepted employment under such plan, has complied with all the conditions entitling him to participate in such plan, his rights become vested and the employer cannot divest the employee of his rights thereunder." However, in the instant case, plaintiffs ignore the fact that they have not complied with all conditions entitling them to participate in the Plan. We point out that they did not accept employment under the Plan for they admit they never knew of it. They did not retire early. They did not serve 10 or more years under the plan. They did not plead that the pension committee determined plaintiffs to be eligible to benefits, or that the committee acted arbitrarily or fraudulently in disallowing benefits to plaintiffs.

■ Let us now examine plaintiffs' alternate theory to the effect that the Plan and Trust are "de facto" terminated and plaintiffs therefore are entitled to share in the liquidation of the trust fund. Section 28, Termination of Trust, provided: "In the event that the Company shall, either before the commencement of the inactive term or during its continuance, give written notice of termination of the Trust and Plan to the Trustee and the Committee, or in the event that Shapleigh Hardware Company shall lose its legal identity by reason of dissolution, merger, consolidation or otherwise and no successor to Shapleigh Hardware Company shall assume its liabilities hereunder, the Trust and Plan shall be deemed to be terminated. In the event of such termination, the Trust Fund shall be liquidated * * *."

Plaintiffs do not plead that Shapleigh ever gave such a written notice of the termination of the Plan nor is there an allegation in the petition to the effect that defendant Shapleigh has lost its legal identity by reason of dissolution, merger, consolidation or otherwise. To the contrary plaintiffs plead that defendant Shapleigh Hardware Company is a corporation organized and existing by virtue of the laws of the State of Missouri. Plaintiffs' contention to the effect that defendant Shapleigh has discharged all its employees, sold its inventory and is not now engaged in the same type of business as formerly, that the management has changed, is of interest, but does not show that the corporation has lost its legal identity. This same argument was advanced in Ackerman v. Globe-Democrat Publishing Co., Mo., 368 S.W.2d 469, without success. Plaintiffs simply have not pleaded facts which bring them within the provisions of Section 28 of the Plan.

We hold that the Plan and Trust Agreement as between named plaintiffs and defendant Shapleigh was an uncommunicated executory proposal; that named plaintiffs had no knowledge thereof whatsoever prior to their discharge; that the Plan was non-contributory as far as the employees were concerned, terminable at the will of defendant Shapleigh for any reason or no reason at all; that named plaintiffs have no vested rights in the Plan and Trust Agreement since they admittedly were under the Plan less than 10 years; that named plaintiffs did not continue in the employment of defendant Shapleigh relying upon the Plan and Trust agreement; that no consideration moved from named plaintiffs to de-

fendant Shapleigh; that defendant Shapleigh was under no duty to advise named plaintiffs of the Plan until such time as the Plan was fully implemented and ready to be put into effect by the defendant company, including the appointment of a Pension Committee as provided for in the Plan.

As to defendants' contention named plaintiffs have failed to state a claim as representatives of a class, we note that the petition stated that named plaintiffs sought to represent a class of persons who were very numerous; that it was impracticable to bring them all before the court; that the relief sought is common to all parties plaintiff; that named plaintiffs fairly and adequately represent the whole class, as each was a salaried employee; each had membership in the Plan and each was discharged by defendant Shapleigh. Since we are here testing only the sufficiency of the petition we are not concerned with proof of these allegations as was the court in Hribernik v. Reorganized School District R–3, Mo.App., 276 S.W.2d 596. The allegation that named plaintiffs fairly represent the whole class, etc., is but a conclusion of the pleader. In view of Supreme Court Rule 52.09(a), V.A.M.R., it would possibly have been better to set forth the method and manner of how named plaintiffs were chosen. However, assuming, without deciding, that named plaintiffs have pleaded sufficient facts authorizing them to bring this as a class action, still the petition must be dismissed, since we hold that the named plaintiffs themselves have failed to state a claim upon which relief can be granted them. If they have no rights to be litigated themselves then they may not bring the action as representatives of a class. Supreme Court Rules 52.08 and 52.09. Hribernik v. Reorganized School District R–3, supra.

The judgment of the trial court insofar as it purports to dismiss with prejudice named plaintiffs' petition for failure to state a claim upon which relief could be granted is affirmed.

However, since named plaintiffs' petition recites that plaintiffs "bring this action on their own behalf and as representatives of a class who *may* wish to join with them * * *" and there is no allegation as required by Supreme Court Rule 52.09(a) showing that plaintiffs have been fairly chosen, it may be inferred that there are perhaps plaintiffs of the class who do not even know of the pendency of this action. It is our duty to protect absent parties in actions of this sort. For these reasons the judgment of the trial court insofar as it purports to dismiss with prejudice the petition of plaintiffs other than named plaintiffs is reversed with directions to dismiss the same without prejudice as to all plaintiffs other than named plaintiffs.

WOLFE, P. J., and RUDDY, J., concur.