CHARLES F. McGORY, SR., Respondent, v NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, Appellant.

Fourth Department, February 25, 1977

*Peter P. Paravati* for appellant.

*Antell, Harris, Githler & Calleri (Angelo Calleri* of counsel), for respondent.

*Per Curiam.* New York State Teamsters Conference Pension and Retirement Fund appeals from a judgment which determined that respondent was entitled to pension benefits from the fund as a duly qualified retiree.

Respondent was employed by Redman Sand & Gravel Co., which was not a contributing employer to appellant's pension fund, from October, 1952 until September, 1962. In September, 1962 respondent became an employee of Manitou Construction Company, a contributing employer, as a result of the sale of Redman and its assets. In 1968 respondent retired and applied to appellant for pension benefits. His application was denied by appellant because respondent did not have 15 years of continuous employment credit as required by the rules of the fund. Appellant's witness testified that before an employee qualifies for pension benefits, he must have five years' service during which his employer contributes benefits to the fund on his behalf (it is conceded that respondent met this requirement because of his employment with Manitou) and at least 10 years of past service. Appellant contended that before an employee could gain credit for past service with a nonparticipating employer (such as Redman), the rules require that he must have been working for a company that was either "purchased or merged with a successor company" participating in the fund at the time of retirement. If Redman had been purchased or merged with Manitou, it is conceded that respondent would qualify for pension benefits by adding his service with Redman and Manitou together. Appellant decided, however, that Redman was not purchased by Manitou but that the successor company was Dolomite Products Company, a nonparticipating employer. Appellant points to a clause in the pension declaration of trust which provides that retirees' rights in the pension fund are: "subject to such terms and conditions as the Trustees shall have determined for entitlement thereto, and further subject to the limitations, terms and conditions that may or shall be specified in the Pension Plan or in any amendment or amendments thereto, except as the Trustees in their sole and exclusive judgment and discretion otherwise determine and decide upon." In view of the broad discretionary power conferred in the trust, appellant asserts that the trustees' decision was reasonable and is now beyond judicial review.

The Court of Appeals has held that notwithstanding that the trustees of a pension fund are vested with sole authority

to determine eligibility matters, their decision may be set aside upon a showing that a denial of benefits was motivated by bad faith, or arrived at by fraud or arbitrary action (*Gitelson v Du Pont*, 17 NY2d 46, 49; *Smith v Stewart*, 45 AD2d 853, affd on mem below 38 NY2d 747; *Berger v Iroquois China Company*, 41 AD2d 1018). The burden of proof rests upon the claimant to establish arbitrariness. We agree with Trial Term that respondent has met that burden in this case.

Appellant's denial rests upon its rule* that respondent's period of employment with Redman may not be counted for purposes of eligibility because Manitou was only a subsidiary corporation and Redman was legally "purchased by" or "merged with" Dolomite, the parent of Manitou and a nonparticipating employer.

There was evidence that Dolomite and Manitou are closely held corporations controlled by a single family with three or four common directors, that all but one of the officers of Dolomite served also as officers of Manitou, and that Dolomite and Manitou shared the same corporate offices. Manitou and Redman operated the same type of business—sand and gravel, ready mixed concrete and trucking—while Dolomite was involved with processing crushed stone and did no transporting. Dolomite did not purchase Redman's corporate entity but only the physical assets (for the sum of $117,500) and the realty. The realty is still owned by Dolomite, but all the physical assets were transferred from Redman to Manitou at the time of the sale from Redman and at the end of 1962 the auditors for Dolomite and Manitou adjusted the journal entries of the two corporations to debit Manitou $118,850 for trucks and automobile equipment used by Manitou as a result of the Redman sale and credited Dolomite with a like amount. Before consummation of the Redman sale, Manitou made an application for highway use permits for all of the Redman trucks; they were registered in Manitou's name and insured by Manitou. Redman's truck drivers, including respondent and

---

* Appellant's witness testified that there was no such written rule with respect to "purchase" or "merger" with a successor and that those terms are nowhere defined in any of the fund documents. He believed the rule required acquisition of the business as a whole, "physical assets, liabilities * * * everything that goes with that particular company", the purchase must be "as a whole going firm." He considered the acquisition of Redman by Dolomite a "purchase" even though Dolomite did not purchase the Redman stock or the Redman assets. From his testimony and the correspondence in evidence, it appears that the trustees' decisions on the subject are made on an *ad hoc* basis.

a majority of all Redman employees, were immediately employed by Manitou upon completion of the sale from Redman; Dolomite never paid these employees. The collective bargaining agreement in force between Redman and its employees before the sale was applied to Manitou in its relation with former Redman employees.

It is apparent that the sale was nominally made to Dolomite because of its stronger cash position, although the acquisition was made so that Manitou could take over the Redman business. Manitou not only undertook to pay respondent's wages but owned the equipment which he operated, carried on the sand and gravel operations previously performed by Redman, and stood in the stead of Redman with regard to all of Redman's labor-management obligations as defined in a preexisting collective bargaining agreement. The conclusion that it was the purpose of the sale that Manitou become the effective purchaser of Redman's sand and gravel business (less its real property) is further reinforced by the fact that Dolomite and Manitou are both closely held corporations controlled by the same principals and that no further evidence of the transaction vis-á-vis Dolomite was required except for a bookkeeping adjustment at the end of the fiscal year. For all intents and purposes, then, Dolomite's role in this transaction was that of a lender, albeit this role was carried out in the somewhat casual manner that is not unusual in dealings between closely allied business entities. If Dolomite and Manitou had entered into a formal written financing agreement, with Manitou designated as the purchaser and Dolomite designated as the lender, there could be little objection by the appellant to respondent's application. His eligibility for pension benefits should not be determined upon the particular technicalities of the purchase which were adopted solely for the benefit and convenience of two closely allied corporations and the decision of the Trial Term should be affirmed.

MARSH, P. J., MOULE, CARDAMONE and GOLDMAN, JJ., concur.

Judgment unanimously affirmed, with costs.