OPINION OF THE COURT
George A. Murphy, J.
In this action the plaintiff, Dominick A. Terito, a former employee of the defendant John S. Swift Co., Inc., seeks a declaratory judgment concerning his rights to a company pension after his services were terminated. The plaintiff also seeks money damages. The defendants deny the material allegations of the complaint and have interposed five affirmative defenses, the first four on procedural *425 grounds while the last defense rests on the doctrine of unclean hands.
The plaintiff argues that he has a vested interest in the pension plan of his former employer and asserts that he has been deprived of this interest by the arbitrary and capricious actions of the defendants herein. The defendants, on the other hand, contend that plaintiff committed “willful misconduct financially injurious to the company” and forfeited the rights to any benefits under the terms of the company’s pension plan.
Plaintiff is 57 years old and was employed by the defendant corporation for 35 years. He was hired initially by the corporate defendant in September of 1941 at the age of 17 as a messenger. Thereafter, he received several promotions and when he was drafted into the Armed Forces in February of 1943 he was employed by the corporation as an assistant press operator. In January of 1946, upon his discharge from the service, he returned to the corporate defendant where he was subsequently promoted to the position of pressman. In 1970 he shifted from day to night hours, working the 5:00 p.m. to 12:45 a.m. shift. Also of significance is the fact that apart from the incident in question the plaintiff was never demoted or suspended and on numerous occasions received periodic raises based on merit. During the entire course of his employment the plaintiff’s salary was determined on the basis of a specified hourly rate and he was expected to “punch the clock” when reporting to and leaving from work.
Plaintiff testified that on Friday, August 22, 1975, as was his practice, he reported to work 15 minutes early at 4:45 p.m. in order to change into his work clothes and be at his machine at 5:00 p.m. According to the plaintiff’s testimony, his wife was out for the evening attending a card party and his son, who suffered from epilepsy, was at home alone. At approximately 8:30 p.m. the plaintiff telephoned his son who indicated that he was not feeling well. Plaintiff then stated that he told his son that he would call back later. At approximately 11:30 p.m. the plaintiff once again telephoned his son who stated that he did not feel well and was about to have a seizure. Unable to find his immediate supervisor, Mr. Milo (who it appears had already left due to *426 a family emergency), the plaintiff left work early without punching out and arrived home at approximately midnight. Unbeknownst to the plaintiff, the plant manager, Mr. Recker, called the plant to check up on the night shift, and discovered that all but 2 of the approximately 35 employees had left work early. The following Monday morning Mr. Recker informed the plaintiff’s supervisor that there was to be no pay for those who left work early the previous Friday. After a day or two of deliberation, the plant manager determined that the services of approximately 10 of the night shift employees, including the plaintiff, would be terminated. After permitting the plaintiff to take a brief vacation with pay, the plant manager informed him that his services were terminated, but that he would be entitled to a pension because of his many years of service.
On August 28, 1975 the petitioner signed a termination statement in order to receive that salary due him and for security clearance. The statement indicated that he was discharged for cause on August 26, 1975.
Mr. Milo, plaintiff’s immediate supervisor and foreman, testified that upon his return to the job on Monday, August 25, he discovered that all the work he distributed to his employees was completed. He stated that he had departed early on the night in question because he had learned from his sister-in-law that his wife had been mugged.
Plaintiff admitted that he and his fellow employees had been warned by the plant manager not to leave work early or to have another employee punch their time card. Additionally, on the time clock a printed warning was posted, stating as follows:
“PLEASE REMAIN IN YOUR DEPARTMENT - AND
“do not punch out
“before 5:00 p.m. or 1:00 a.m.
“without SPECIAL PERMISSION from
“your foreman.
“Anyone punching another employee’s card
“is subject to dismissal.”
The plant manager also posted a handwritten warning stating “If you do not wish to work 7V2 hours per day, please *427 inform me and I think I can find a replacement for you.” Neither the oral nor the printed or written warnings gave any notice that punching out early could result in a termination of vested pension benefits. In fact, there was testimony that an employee who punched in late was not always docked for lateness by his supervisor. The testimony also disclosed that on more than one occasion a certain employee was permitted to punch in and out for his fellow workers with the consent of his supervisor. The testimony revealed a long history of these lamentable deficiencies in the supervision, control and discipline of employees at the plant level. A varied and inconsistent application of plant rules was the responsibility of the employer, not this pressman. The toleration of these long time operational deficiencies was unexplained except, perhaps, for the conceded concern over possible union response to tougher employer action, given the fact that there had been some labor problems.
Despite repeated efforts, both oral and written, plaintiff was unable to get any information concerning his entitlement to pension benefits. It was only after plaintiff wrote to his congressman some three years after the termination of his services that he learned that the trustee of the retirement fund and the members of the retirement committee found that he had forfeited any interest he possessed in the company pension plan. Plaintiff further testified that he received a retirement booklet not from his employer, but from a fellow employee and that he was afforded no hearing concerning the termination of his pension rights.
The pertinent provision of the pension plan in question is article IV, section 4, which reads as follows: “4. wrongful acts — In case an employee or pensioner reveals or discloses trade secrets or secret processes of the Company, or commits an act of wilful misconduct financially injurious to the Company, or engages in any occupation or service, or does any other act, in competition with and to the injury of the Company, his rights to any benefits under this Plan shall forever cease.”
It is manifest that what was intended by the terminology of the above section was to preclude the awarding of a *428 pension to an employee or pensioner who committed a willful, designed, and major disloyal act actually or potentially financially injuring or competing with the company or its business. It was a misapplication to apply it where the act complained of was in no way demonstrably encompassed by its provisions. Such misapplication appears to go beyond the reasonable exercise of discretion.
The plaintiff claims that he has a vested interest in his former employer’s pension plan and considering his years of credited service should be entitled to receive a pension at age 65 or if he chooses the early retirement plan, at age 60. The provisions of article IV, section 4, specifically authorize a forfeiture of pension benefits where an employee commits “wilful misconduct financially injurious to the Company.” While a provision of this nature is permissible under State law (Gitelson v Du Pont, 17 NY2d 46, 49), such a provision under the Federally enacted Employees Retirement Income Security Act of 1974 (ER-ISA) is prohibited (US Code, tit 29, § 1053, subd [a], par [2]). However, the provisions of ERISA invalidating the so-called “bad boy” clause are applicable only to plan years beginning after December 31, 1975 (US Code, tit 29, § 1061, subd [b], par [2]) and have specifically been held inapplicable to employees whose employment was terminated prior to January 1,1976 (Fremont v McGraw-Edison Co., 606 F2d 752, cert den 445 US 951). Thus, it would appear that any interest plaintiff possessed relative to the benefits in question are not protected from the forfeiture provisions under the Federal statute (Ponce v Construction Laborers Pension Trust for So. Cal., 628 F2d 537).
According to the clear weight of Federal authority, the actions of a trustee in the administration of a pension plan must be sustained unless plaintiff can prove such conduct has been arbitrary or capricious or made in bad faith. (See Bayles v Central States, Southeast & Southwest Areas Pension Fund, 602 F2d 97, 99-100; Bueneman v Central States, Southeast & Southwest Areas Pension Fund, 572 F2d 1208, 1209; Toland v McCarthy, 499 F Supp 1183, 1190; Frary v Shorr Paper Prods., 494 F Supp 565, 569; Rehmar v Smith, 555 F2d 1362; Johnson v Central States, Southeast & Southwest Areas Pension Fund, 513 F2d 1173; *429 Giler v Board of Trustees of Sheet Metal Workers Pension Plan of So. Cal., 509 F2d 848; Brune v Morse, 475 F2d 858.) Thus, where as here, the fiduciary is granted broad discretion to administer the plan, the court will intervene only upon a showing that the fiduciary has acted in an arbitrary or capricious fashion towards a person to whom a trust obligation runs (Kosty v Lewis, 319 F2d 744, 747). This standard would be the same even if State law were applied, be it the law of Missouri or of New York State (Gitelson v Du Pont, supra; McGory v New York State Teamsters Conference Pension & Retirement Fund, 56 AD2d 209; Berger v Iroquois China Co., 41 AD2d 1018, 1019; Hadden v Consolidated Edison Co. of N. Y., 34 NY2d 88; Smith v Stewart, 45 AD2d 853, affd 38 NY2d 747; Connell v United States Steel Corp., 516 F2d 401; Hayes v Morse, 347 F Supp 1081, 1086; Matter of Missouri Pacific Ry. Co., 49 F Supp 405, 406; Erhle v Bank Bldg. & Equip. Corp. of Amer., 530 SW2d 482, 494 [Mo]; Geiwitz v Geiwitz, 473 SW2d 781 [Mo]; Menke v Thompson, 140 F2d 786; Molumby v Shapleigh Hardware Co., 395 SW2d 221 [Mo]).
Applying then these principles to the facts presented, the court finds that the determination by the trustee and the retirement committee was arbitrary, capricious and an abuse of discretion. The employer concedes there was not only selective firing but selective deprivation of benefits without any objective basis for such varied punitive response. Such selectivity was unrelated to conduct but rather to the employer’s desire and need to continue the functioning of the print shop and to avoid a close down due to mass firings. On the occasion in question, the employer could not show any financial injury to the corporation since the plaintiff was shown to have completed all of his assigned work for that day. Moreover, defendants acknowledged plaintiff to have been a good and faithful employee for some 35 years. His departure on the night in question was precipitated solely because of an apparent emergency related to his son’s physical condition. Based on the entire trial record, the determination of the trustee and the committee that characterized plaintiff’s conduct as “financially injurious” warranting forfeiture of pension *430 benefits has simply no basis in fact or reason. (1 NY Jur, Administrative Law, § 184.)
The defendant has failed to adduce any evidence concerning its first four affirmative defenses relating to procedural questions, and these defenses are accordingly dismissed. Also, considering the testimony adduced by the plaintiff and not refuted by the defendants, the affirmative defense of unclean hands must similarly be dismissed.
Based on the foregoing, the court finds that the plaintiff has a vested interest in the pension plan of the defendant corporation and, in accordance with “The Plan,” is entitled to receive benefits either at age 65 or earlier should he so elect.
Plaintiff’s cause of action for damages has not been established at this juncture in view of the fact that he would not be entitled to receive any pension until he reached at least the age of 60. This cause of action is therefore dismissed. Judgment is granted to the plaintiff as herein indicated and the plaintiff is awarded the costs and disbursements of this action.
The motions upon which the court reserved decision during the trial are disposed of as herein indicated.